Gauss Sons v. Orr & Lindsey.

| 46 | 129 |
|----|-----|
| 55 | 78 |
| 55 | 418 |
| 46 | 129 |
| 58 | 621 |
| 46 | 129 |
| 63 | 53 |
| 46 | 129 |
| t88 | 369 |

## GAUSS SONS v. ORR & LINDSEY.

1. FRAUDULENT CONVEYANCE: *Benefit reserved to mortgagor.*
   A mortgage of merchandise which authorizes the mortgagor to continue the sale of the goods and reserve any part of the proceeds of sale to his own use is void as against a subsequent mortgage of the goods.

2. CONSTRUCTION OF CONTRACT: *When doubtful as to honesty or legality.*
   When an instrument is susceptible of two probable conflicting constructions, one of which imputes bad faith to either party, and the other would not, or one would render the contract unlawful and the other lawful, the latter construction should be adopted.

APPEAL from *Washington* Circuit Court.
Hon. J. M. PITTMAN, Circuit Judge.

*B. R. Davidson,* for appellants.

Appellants rest this case on the mortgage given by Suttle to Orr & Lindsey, and insist that it is fraudulent and void. The mortgage authorized the mortgagor to retain possession and retail the goods, and did not require him to account for the sales of the first week. Nor was he required to account for the proceeds subsequently, further

9–46

than that he was to pay $50 or more (at his option) regard-less of the amount he should sell. The case is clearly within the principle of *Lund v. Fletcher, 39 Ark., 325*, and *Martin v. Ogden, 41 Ark., 187–193*. There is no "con-tinuing trust" by which the proceeds, beyond the $50, could be reached. If he may mortgage and only account for $50 each week, he may mortgage and only account for $1. If he can make a valid mortgage and reserve to himself the sales of the first week, he may make it and reserve the sales of the first month or year. It is not the amount of interest reserved to himself that renders the mortgage void. If allowed to dispose of *any part* of the stock for his own use it renders it void. *Blackeslee v. Ross-man, 43 Wis., p. 116.*

*L. Gregg,* for appellees.

The theory of our law is that a mortgagee cannot hold a stock of merchandise for a mortgagor and allow him to retail the same for his benefit, to the injury and delay of other creditors. If these things do not appear such mort-gage is valid. *Lund v. Fletcher, 39 Ark., 325; Martin v. Ogden, 41 ib., 186.*

Orr & Lindsey gave no permission to sell for the mortga-gor's benefit. He was only allowed to *hold possession during the will of Orr & Lindsey* and required to account to them for *all sales* at short intervals, the second week being the time when the first account should be made. *All sales* were to be accounted for. The mortgage was valid.

COCKRILL, C. J. The appellants and the appellees each took a mortgage upon a stock of merchandise to secure the payment of debts due them. The mortgage to the appellees was prior in date and first recorded, and the ap-

peal presents the single question whether the court erred in refusing to declare the mortgage void as against the appellants' mortgage. The clause in the appellees' mortgage that gave rise to the controversy is as follows, viz.:

"It is agreed that I" (the mortgagor) "am to hold possession of my said stock of goods during the will of said Orr & Lindsey, and retail the same and account to said Orr & Lindsey each week after this week for the proceeds of sales, and to pay $50 thereof, if not more, each week until said sum" (the mortgage debt) "is fully paid; said $50 per week to be paid without regard to the amount of sales."

It is contended that this clause conferred upon the mortgagor the power to reserve the proceeds of the first week's sales, after the execution of the mortgage, to his own use, and did not compel him to account, in any week, for more than $50, even though the proceeds should exceed that amount. If either branch of this argument is followed, it must be conceded that the mortgage is void, as far as the subsequent incumbrance is concerned. *Gauss Sons v. Doyle, ante,* and cases there cited.

1. MORTGAGE: Benefit reserved to mortgagor.

The instrument is certainly ambiguous. The exact meaning of the contracting parties is not manifest. If the record informed us what the course of business, under the contract, was, that might throw light upon the meaning they assigned to it, and so give the basis of its correct construction.

"Tell me," says Lord Chancellor Sugden, "what you have done under a deed, and I will tell you what that deed means." *Atty. General v. Drummond, 1 Dr. & W., Irish Chy., 353.* But we are left to the naked legal construction without extraneous aid.

It is one of the cardinal rules of interpretation that where an instrument is susceptible of two probable conflicting constructions, one of which imputes bad faith to either party,

2. DOUBTFUL CONTRACT: Construction.

while the other would be free from such taint; or, if one interpretation would render the contract unlawful and the other lawful, the latter construction should be adopted. The law does not assume that it was the intention of the parties to commit a fraud or violate the law. *2 Whart. on Cont., sec. 654; Bishop Cont., sec. 583; Best Pr. Ev., sec. 347; 2 Whart. Ev., sec. 1249; Lorillard v. Clyde, 86 N. Y., 384.*

Applying this rule to the case in hand, the meaning of the clause is that the mortgagor should sell for the mortgagees' benefit and account to them for the proceeds; that if the proceeds of sales should not reach $50 a week that sum should be paid nevertheless, and that the first settlement and account of sales should be made the next week after the mortgage was executed. The circuit court upheld the mortgage and the judgment is right. See *Gauss Sons v. Doyle, sup.,* and cases cited.

Affirm.