58   617
c70  511

58   617
78    92
c78   342

## VAN WINKLE *v.* SATTERFIELD.

### Opinion delivered March 31, 1894.

1. *Master and servant—Sunday labor.*

    An agreement of an employee to perform all the duties as sales-man connected with a book and stationery store for the period of one year, containing no express stipulation that he shall labor on Sunday, will not bind him to work on that day, in the absence of a necessity therefor.

2. *Damages—Wrongful discharge of servant.*

    An employee who has been wrongfully discharged before expiration of his term of employment and brings suit at once for breach of the contract is entitled to recover compensation for the injury suffered by the loss of wages down to the day of trial.

3. *Mitigation of damages—Other earnings.*

    In estimating the damages for the wrongful discharge of a servant, such sums as he, by reasonable diligence, might have earned in a similar business, making allowance for the expense of obtaining employment, should be deducted from the wages he might have earned under the broken contract; but in such case the burden of proof is on the employer to show that the servant might have obtained similar employment.

4. *Reduction of servant's damages by work done for himself.*

    To entitle an employer to reduce the damages recoverable for wrongful discharge of his servant by showing that the servant has performed work on his own account, he must prove that the work was incompatible with the performance of the service stipulated to be performed under the violated contract.

Appeal from Washington Circuit Court.

EDWARD S. MCDANIEL, Judge.

*B. R. Davidson* for appellant.

1. If Satterfield was wrongfully discharged he had two remedies. (1.) He had a right to hold himself in readiness to perform his contract, wait to the end of his term, and sue for the amount due. (2.) He could treat the contract as rescinded, and sue on a *quantum meruit* for the time he had served. 9 Ark. 394; 39 *id.*

288; 14 Abb. Pr. (N. S.) 156; Wood, Master and Servant, pp. 239–40, and notes. If he treated the contract as subsisting, his time was his employer's, and it was his duty to reduce the amount of his damages as much as possible by engaging in similar business at the best wages he could obtain. Cases *supra*.

2. The refusal to perform the duties required of him, and which he had hitherto for a long time performed under the contract, was good ground for his discharge. 2 Stark. 256.

3. In view of these authorities the court's charge was erroneous.

4. It is clear that the contract contemplated the discharge of all duties connected with the business, and to arrive at what the contract contemplated, the facts that Satterfield knew at the time that the store was to open on Sundays, and that he did, under the contract, open the store on Sundays continuously until November, should have been considered, and they show conclusively the understanding of the parties.

BATTLE, J. This action is based upon a written contract, in the following words and figures: "This contract, made and entered into this first day of January, 1890, by and between J. D. Van Winkle, party of the first part, and W. T. Satterfield, party of the second part, witnesseth: That whereas, the said J. D. Van Winkle has this day employed the said W. T. Satterfield to work as salesman, and do all other duties connected with the said J. D. Van Winkle's book and stationery store, now situated in the postoffice building on the south side of the public square in the city of Fayetteville, Ark., for a special period of time, beginning with January 1, 1890, and extending one year from that date, at a salary of $60 per month, payable at the end of each month. And I, the said J. D. Van Winkle, do hereby grant the said W. T. Satterfield the privilege

of continuing to work in the same capacity above stated, and for the same salary above stated, until January 1, 1893, if he so desires.    And I, the said W. T. Satterfield, do agree that for the above considerations, I will well and truly perform all duties connected with the book and stationery store to the best of my ability, all things being subject to the direction or management of the said J. D. Van Winkle.

J. D. VAN WINKLE,<br>W. T. SATTERFIELD."

Satterfield worked for Van Winkle, as a clerk and salesman, in a book and stationery store, in the performance of his part of this contract, until the 10th of November, 1890, when Van Winkle discharged him.    The following facts show how the discharge occurred :    A postoffice was in the rear end of the store.    The entrance to it was the front door of the store, which was kept open on Sundays, from 8 to 9 a. m., from 12 to 1 p. m., and from 4 to 5 p. m., to enable citizens to get their mails.    Satterfield was in the employ of Van Winkle before the written contract was entered into, and had been in the habit of remaining in the store and watching the goods while it was open on Sundays.    Van Winkle undertook to make railings to protect the goods, so that it would not be necessary for Satterfield to remain on Sundays.    They were to be made so that they could be put up and taken down at will.    In the event they had been made and used, it would have been necessary to put them up on Saturday nights and carry them to the cellar on Monday mornings.    Upon his undertaking to make them, Satterfield proposed to remain in the store while it was open on Sundays, saying that he preferred doing so to putting them up and carrying them in and out of the store.    They were not made, and Satterfield continued to watch the goods on Sundays, with few exceptions, until he was discharged on his refusal to do so any longer.

At the time of his discharge he offered to perform his contract, insisting, however, that it was no part of his duty to remain in the store on Sundays; and notified Van Winkle in writing that he elected to work for him under his contract until the first of January, 1893, and thereby offered to do so, but Van Winkle refused to allow him to remain in his employment, unless he would stay in the store on the Sabbath and take care of the goods, as he had been doing, which Satterfield declined to do; and he was, thereupon, discharged.

On the 7th of January, 1891, Satterfield commenced this action against Van Winkle, on their contract, to recover the damages caused by its breach. Van Winkle admitted the discharge, but denied that it was wrongful.

In April, 1891, the issues in the cause were tried by a jury. The foregoing facts were proved, and evidence tending to prove that Satterfield was out of employment, after he was discharged and before the trial, for fifty-two days, and that he was in business on his own account for the remainder of the time, was adduced. What the value of his labors in his own business which were performed after his discharge was, does not appear.

The jury returned a verdict in favor of the plaintiff for $104; the court rendered judgment accordingly; and the defendant appealed.

Two questions are presented for our consideration: (1) Was the discharge wrongful; and (2) if so, what damages were recoverable?

1. Was Satterfield wrongfully discharged?

In general, a contract to labor by the month or year does not bind the laborer to work on Sunday. The presumption is, men do not intend to violate the law, until the contrary appears. *Johnson* v. *Commonwealth*, 22 Pa. St. 109. Where an instrument of writing is susceptible of two conflicting constructions, one of which

1.  Duty of salesman to labor on Sunday.

would render the contract unlawful, and the other lawful, to carry this presumption into effect, the latter should be adopted. *Gauss Sons* v. *Orr & Lindsey*, 46 Ark. 129.

Necessity which can be avoided by the exercise of reasonable precaution cannot excuse or justify labors on the Sabbath which are forbidden by the statutes. *State* v. *Goff*, 20 Ark. 289.

The contract sued on did not require the parties to labor on Sunday. Satterfield only bound himself by it to discharge the duties of a salesman or clerk. The violation of the Sabbath was not among those duties. The work which the appellant demanded of him could not be lawfully done on the Sabbath. The evidence does not show that there was any necessity for it, or that it could not be avoided by means which would have subserved the purpose for which it was required. On the contrary, it does show that railings would have served the same purpose. Satterfield was consequently wrongfully discharged.

(2). What damages are recoverable?

A servant who has been wrongfully discharged by his employer before the time for which he was hired has expired has these remedies : "First, he may consider the contract as rescinded, and recover on a *quantum meruit* what his services were worth, deducting what he had received for the time during which he had worked. Second, he may wait until the end of the term, and then sue for the whole amount, less any sum which the defendant may have a right to recoup. Third, he may sue at once for breach of the contract of employment." He, however, can adopt only one. *Colburn* v. *Woodworth*, 31 Barb. 381 ; 2 Sedgwick on Damages (8th Ed.) sec. 665, and cases cited.

If he adopts the third remedy, he can recover the damages which he has sustained down to the day of the

2. Damages for wrongful discharge of servant.

trial, which is limited to a compensation for the injury suffered by the breach of the contract. The loss of the wages which his employer agreed to pay him constitutes the injury. What, therefore, he has suffered by reason of the loss of the wages, as a rule, is the amount of the damages he is entitled to recover. 2 Sedgwick on Damages (8 ed.), sec. 667, and cases cited ; 2 Sutherland on Damages (2 ed.), secs. 692–695 and cases cited ; Wood on Master and Servant (2 ed.), p. 246.

It is the breach, and not the time of the discharge, or when the action was brought, that gives the damage. If the consequences for which the law renders the employer responsible developes so as to create an absolute injury at the time of the trial, he is entitled to a compensation for such injury. He cannot recover the damages he might suffer after the trial, for the obvious reason. they cannot be assessed in advance. For he might, after the recovery of the judgment, obtain employment from other persons, and receive, for the residue of the term for which he was hired in the first instance, as much as, or more than, he would have been entitled to, under the broken contract, had he served his time out ; or he might die before his term of service expires ; and in either event recover more than the law allows, which simply intends to save him from actual loss by the employer's breach of the contract. *Gordon* v. *Brewster*, 7 Wis. 355 ; *Fowler* v. *Armour*, 24 Ala. 194 ; *Everson* v. *Powers*, 89 N. Y. 527 ; *McDaniel* v. *Parks*, 19 Ark. 671 ; Wood on Master and Servant, p. 260 ; 2 Sutherland on Damages, secs. 692, 693 ; 1 Sedgwick on Damages, sec. 85.

3. Reduction of damages by proof of other earnings. When a servant is wrongfully discharged by his employer, it is his duty to use "reasonable efforts to avoid loss by securing employment elsewhere." It is not, however, his duty, if he was employed in any special service, as in this case, to engage in a business different from that in which he was employed. In estimating his

damages, therefore, such sums as he, by reasonable diligence, might have earned in a similar business, making allowance for the expense of obtaining employment, should be deducted from the wages he might have earned under the broken contract. *Walworth* v. *Pool*, 9 Ark. 394; *Gillis* v. *Space*, 63 Barb. 177; *Costigan* v. *Railroad Co*. 2 Denio, 609; Wood on Master and Servant, p. 250; 2 Sutherland on Damages, sec. 693.

The burden of proof is on the employer to show that the servant might have obtained similar employment; for the failure of the servant to obtain other employment does not affect the right of action, but only goes in reduction of damages, and, if nothing else is shown, "the servant is entitled to recover the contract price upon proving the employer's violation of the contract, and his own willingness to perform." The fact that the servant might have obtained new employment does not constitute a defense. It is one of the facts to be considered in estimating the servant's loss. *Howard* v. *Daly*, 61 N. Y. 362; *Gillis* v. *Space*, 63 Barb. 177; *Costigan* v. *Railroad Co*. 2 Denio, 659; *Sutherland* v. *Wyer*, 67 Me. 64; 2 Sutherland on Damages, sec. 693; Wood on Master and Servant, p. 245.

To entitle the employer to reduce the damages recoverable by showing that the servant has performed work on his own account, he must prove that the work was incompatible with the performance of the service stipulated to be performed under the violated contract. *Gates* v. *School District*, 57 Ark. 370; 1 Sedgwick on Damages, sec. 667.

4. Reduction of damages by work done.

In *Gardenhire* v. *Smith*, 39 Ark. 280, cited by appellant, the court held "that where a servant is employed for a particular term, at stipulated wages, and his employer discharges him without cause, before the expiration of the term, he may elect to treat the contract as continuing, keep himself in readiness to perform

it on his part, and, after the expiration of the term," sue and recover of "his employer on the contract    *    *    * the whole of the wages due him by its terms," less what he had an opportunity to make by like service after his dismissal; or he may treat "his dismissal as a rescission of the contract," and sue immediately, and recover the value of his services to that time, as upon a *quantum meruit.*   The court did not undertake to say in that case what relief he would be entitled to in the event he elected to treat the contract as continuing, and sued upon it for damages before the expiration of his term of service.   But it did in *McDaniel* v. *Parks*, 19 Ark. 671.   In that case the servant was employed to oversee for the year 1854, was discharged without cause on the 22nd of April, and sued on the 28th of August, in the same year, and recovered a reasonable sum for the whole of the term for which he was employed, there being no evidence as to the wages agreed to be paid or that he received other employment during his term of service.   In the report of the case it is not stated when the trial occurred, but it is manifest, from the instructions of the court to the jury, that it took place after the time for which he was hired had expired.   The opinion in these two cases are in harmony with the views we have expressed.

Judgment affirmed.