[No. 3938.]

## SCHOOL DISTRICT NO. 3 IN CLEAR CREEK COUNTY V. NASH.

1. APPEALS—*Law of the Case.* Where upon writ of error out of the Supreme Court the complaint is held to state a cause of action, this judgment is the law of the case upon a second writ of error in the Court of Appeals. (554.)

2. MASTER AND SERVANT—*Wrongful Discharge—Damages.* Where a servant is discharged, without cause, before the lapse of the period of his employment, and the sole defense of the master is the failure of the servant to use reasonable effort to secure other employment, such failure is a matter of defense. It is for the master to show what the servant earned, or by reasonable effort might have earned, subsequent to his discharge, and during the period for which he was employed. (556.)

A school teacher, wrongfully discharged, and securing employment in a different locality, is entitled to an allowance for expenses reasonably incurred in seeking new employment and for an increase in his expenses, occasioned by the removal to the new locality, and may show such increase in his expenses, without pleading it. (555.)

But the expense of removing the teacher's family to the new locality can not be considered unless specially pleaded. (556.)

*Error to Clear Creek District Court.* HON CHARLES MCCALL, Judge.

Mr. JOHN J. WHITE, for plaintiff in error.

Messrs. MORRISON & DE SOTO, for defendant in error.

HURLBUT, J.

October 7, 1905, defendant in error, as plaintiff, filed her complaint in. the District Court, alleging in substance that on June 14, 1904, she was employed by defendant as a teacher in one of its schools, at an agreed price of $70 per month, for the period of one year beginning July 1, 1904; that she accepted such employment and performed services as a teacher thereunder until January 1, 1905, at which time, without her assent and without cause, she was discharged from her employment by defendant; that defendant paid her in full for all services up to and including December 31, 1904, but no more; that at all times from said 1st day of January until June 30, 1905, she was ready and willing to perform the services as teacher under said employment, but was prevented from doing so by defendant. To this complaint defendant filed answer containing a general denial and a second defense, alleging that by force of a certain resolution or regulation passed by said defendant on June 13, 1904, such employment was conditioned upon her having or obtaining (on or before January 1, 1905), a first-grade certificate from the county superintendent of schools of Clear Creek county, failing in which the contract of employment would become void and of no effect; further alleging that plaintiff consented to such condition. A reply was filed to this answer, containing a general denial and a "second reply," stating that plaintiff was a graduate of the State Normal School of Colorado, and held a diploma from said school signed by the lawful authorities of that institution, and that the same had been filed with said county superin-

tendent of schools; further averring that under the provisions of section 4128, Mills' Annotated Statutes, said diploma entitled her to teach in any of the public schools of the state, and that the resolution was void, of no effect, and contrary to the terms thereof.   The case was tried to a jury, verdict returned in favor of plaintiff for the sum of $185,88, and judgment rendered thereon.   The case is in this court for determination by lawful transfer from the Supreme Court.

The contract of employment is founded upon two written instruments, viz.:

"Georgetown, Colo., June 15, 1904.

"Miss Margaret Nash—Dear Madam:   You are hereby notified that at a meeting of the board of education, held on Tuesday evening, January 14th, you were reappointed as teacher in district No. 3, Clear Creek county, for the ensuing school year at (70.00) seventy dollars per month.   At a meeting held on Monday evening, June 13th, the following resolution regarding the examination of teachers was adopted:   'Resolved, that after January 1, 1905, all teachers in district No. 3, Clear Creek county, shall hold a first-grade certificate.'   In accepting this position, unless you already hold a first-grade certificate, you will be required to pass the county examination in December, in accordance with the above resolution.   Very respectfully, Will C. Hood, Secretary."

"Georgetown, Colo., June 20, 1904.

"To the Secretary of the School Board, Georgetown, Colo.—Dear Sir:   Your notice dated June 15, 1904, containing appointment as teacher in your district for the ensuing year was received by me in due time.   I accept the appointment, and am ready to sign a regular contract to that effect. Respectfully yours, Margaret A. Nash."

This is the second trial of this case.   The first trial resulted in judgment for defendant, which judgment was taken to the Supreme Court on error, and there reversed. *Nash v. School District No.* 3, 49 Colo., 555, 113 Pac., 1003

The court held that the diploma of defendant in error entitled to her to teach in the public schools of the county without first obtaining a certificate from the county superintendent of schools, and that the resolution was in conflict with the statute, was void, and of no effect as against defendant in error. After determining the matter just alluded to, the court further said: "The facts stated in the complaint, and supported by the evidence, were sufficient to constitute a cause of action in favor of plaintiff, and, unless rebutted, entitled her to a judgment for the actual damages by her sustained."

It is difficult to find in this record sufficient merit to justify the appeal. The issues were clearly defined, and, after the Supreme Court had decided against defendant the only serious question that could likely arise in the case, the latter had no defense left. The complaint stated a cause of action, and the evidence was undisputed and clearly sustained plaintiff in her right of recovery. At the second trial the only thing left for defendant to do, in order to prevent full recovery by plaintiff for the five months' salary, was to diminish the sum by introducing evidence, if it could, showing plaintiff had earned other money during that period, or that she had remained idle and made no reasonable effort to find other employment, which facts, if proven, could be used by defendant to minimize the loss for which it was liable. The spirit shown by the plaintiff is highly commendable, for the record shows that almost simultaneously with her wrongful discharge she sought other employment, and secured the same within less than a week, but at a reduced salary, and in a locality remote from where she had been teaching. There is no doubt that she suffered expense and inconvenience in changing her residence from where she had been employed for four years to her new place of employment.

The only question raised on this appeal which even approaches importance is that relating to expenses allowable to an employe wrongfully discharged, where such expenses are necessarily incurred by such employe in securing new employment, and the necessary additional cost occasioned by the changed conditions surrounding the new employment. At the trial defendant made objection to all evidence which tended to show any expenses incurred by plaintiff in or about the obtaining of the new employment or her removal from Georgetown to Cripple Creek in order to properly establish herself preliminary to entering upon the discharge of her duties, which objections were based entirely upon the contention (1) that such expenses were not chargeable to defendant, and (2) that they were not pleaded in the complaint. We fail to see any merit in either contention. As to the first, counsel for plaintiff in error seems to contend that the items of expense and increased cost of living, etc., testified to by the plaintiff, were charges which plaintiff was seeking to recover from defendant as part of her cause of action. If such be the case, he is clearly in error, as no such claim was made by plaintiff, and the case was not tried on any such theory. When counsel was pressing this contention in the trial court, and claiming that plaintiff was attempting to show these items as recoverable against defendant in the main case, the court interposed and said: "I don't hold it is a charge against the school district. That is not the purport or theory of this examination now. I am trying to find out, and want the jury to know from the testimony of the witness, how much money this teacher earned during the time she should have been employed here, and how much she could have earned with reasonable diligence, minus the expenses that she had above the expenses here; that is what I want to come at. Not any expenses, except those expenses, figured directly, in connection with her work that are in excess of the expenses in that connection that she would have had to sustain here in Georgetown."

The objection, therefore, on the ground given does not appear to have been well taken.

(1-3)   Concerning the second ground, we have only been able to find one state, Kentucky, which holds that in an action of this kind the complaint must state that, subsequent to the wrongful discharge, plaintiff made reasonable effort to obtain other employment and failed, or that he thereafter secured other employment and earned a certain sum.   As opposed to this doctrine, it is almost universally held, our own Supreme Court being among those so holding, that such matters are entirely for the defendant to show, and, if he fails to do so, the plaintiff will be entitled to judgment for the full amount due for the unexpired term following the wrongful discharge.   It is not claimed in the instant case that such matters were pleaded.   At the trial, after plaintiff had established by proper evidence her cause of action, her counsel suggested to the court that evidence of matters constituting a rebate against the judgment plaintiff was entitled to should come from the defendant.   The court erroneously ruled that plaintiff should proceed to show such rebates in her main case.   No exception was taken to the ruling; but, if there had been, no harm would have resulted, as defendant brought out the facts on cross-examination. This ruling of the court explains why we find plaintiff offering evidence to show the rebates, which should have properly come from defendant.   Certainly the defendant should not be heard to complain when the court erroneously compels the plaintiff to prove his case for him, and that is the situation here.   After plaintiff proved the contract and employment, its breach by defendant and wrongful discharge of plaintiff, the amount of the salary and the period for which she was entitled to recover, her case was complete, and, unless defendant, either by cross-examination or original evidence, had shown the amount earned by plaintiff during that period, she would have been entitled to a judgment for the full period of five months at $70 per month.

It is evident that, if the court had not erroneously compelled plaintiff to make his proof, and she had remained silent, then, after defendant had proven the amount plaintiff had earned after discharge, plaintiff would have been entitled to show in rebuttal her expense in securing the new employment and additional costs to her in performing the duties of such new employment.

[4]    The Supreme Court, in *Saxonia M. & R. Co. v. Cook,* 7 Colo. 569, 4 Pac. 111, defined the law as applicable to some of the issues in this case as follows: "Where one is employed to serve for a definite term, as for a year, and is discharged before the expiration of the term, without fault on his part, he has a right to recovery either for the balance of wages due or damages for the loss he may have suffered by reason of the wrongful discharge. * * * Under the remedy in the latter class of cases, *i. e.,* where the action is for breach of the contract, whether brought before or after the end of the term, the measure of damages is not the amount of wages stipulated in the contract for the entire term, but the actual loss, to be established by proof, although the amount of the agreed wages may be taken as the measure of damages *prima facie,* or in the absence of any other showing. He cannot recover the wages accruing for the balance of the term *as a matter of course.* He is bound to use reasonable effort to secure labor elsewhere. If he has secured labor elsewhere, or by reasonable diligence might have done so, the amount received, or that might have been received, for such labor is to be deducted from the amount of damages occasioned by the breach of the contract sued upon. * * * But, while the defendant in such case is entitled to mitigate the damage to the extent of what the plaintiff might have earned from other parties during the term, the burden of establishing such mitigating facts is upon the defendant." See also, *Howard v. Daly,* 61 N. Y., 362, 19 Am. Rep. 285; *Strauss v. Meertief,* 64 Ala., 299, 38 Am. Rep., 8. From 26 Cyc., pp. 1006 and 1009, I quote

the following: "The measure of damages for the breach of a contract of employment is *prima facie* the sum stipulated to be paid for the services, and the burden of reducing the damages by proof that the servant has, or might, with reasonable diligence, have obtained other remunerative employment after his discharge, rests on the employer."

[5]   The question as to whether or not one suing for a breach of contract based upon a wrongful discharge before the expiration of the term of employment may charge the defendant with expenses incurred in obtaining new employment for the unexpired term, and for additional necessary expenditures and outlays caused by the change from the old to the new place of employment, seems to be settled in the affirmative by the general trend of authority.   In fact, we have been able to discover only one case, *Tickler v. Andrae Mfg. Co.*, 95 Wis. 352, 70 N. W. 292, which seems to hold to the contrary.

In *Development Co. of America v. King*, 170 Fed. 923, 96 C. C. A. 139, the court held that one wrongfully discharged was entitled to subtract from the amount of money earned by him in another employment thereafter a certain sum which he had paid for stock in a corporation, which stock it was necessary for him to purchase in order to obtain employment; the court saying: "The purchase of the stock was an expense incident to obtaining the employment."

In *Tufts v. Plymouth G. M. Co.*, 14 Allen (96 Mass.) 407, the court held that one wrongfully discharged before the expiration of the term of employment was entitled to have considered his necessary expense in traveling to the place of his new employment; the court saying: "If he was obliged to return home or go elsewhere, the expense of removal from the mines to the place of employment became a proper subject of consideration."

In *Van Winkle v. Satterfield*, 58 Ark. 617, 25 S. W. 1113, 23 L. R. A. 853, it was held that a servant wrongfully discharged before the expiration of his term of employment

was entitled to have deducted from the wages he earned during the term, or might have earned, the expense of obtaining employment elsewhere; the court saying: "In estimating his damages, therefore, such sums as he, by reasonable diligence, might have earned in a similar business, making allowance for the expense of obtaining employment, should be deducted from the wages he might have earned under the broken contract. * * * The burden of proof is on the employer to show that the servant might have obtained similar employment, for the failure of the servant to obtain other employment does not affect the right of action, but only goes in reduction of damages, and, if nothing else is shown, 'the servant is entitled to recover the contract price upon proving the employer's violation of the contract, and his own willingness to perform.' The fact that the servant might have obtained new employment does not constitute a defense. It is one of the facts to be considered in estimating the servant's loss."

To the same effect: *Pennsylvania Co. v. Dolan*, 6 Ind. App. 109, 32 N. E. 802, 51 Am. St. Rep. 310; *Dickinson v. Talmage*, 138 Mass. 249; Sedgwick on Damages (8th Ed.), secs. 666, 667.

The opinion in the Wisconsin case of *Tickler v. Andrae Mfg. Co., supra,* is brief, and cites but one authority, and that upon a different proposition. We quote from the opinion of the appellate court as follows: "The jury was instructed, in effect, that, in case they found for the plaintiff upon the principal issue, they should give him the amount of the agreed wages for the year, $900, less such sums as he had earned and received from other sources, and that to that result they should add the sum of his reasonable expense in removing himself, his family and stuff from New London back to Milwaukee. * * * This was error, for, while the defendant is entitled to be credited by the plaintiff's net earnings only, yet it may fairly claim that its proper credit shall not be diminished by any sum which he

shall expend for his own purposes, or for the convenience of his family. The expenses of the return of the family to Milwaukee were not within the defendant's undertaking."

[6]    So it appears from this that the court considered the removal of the plaintiff and his family from New London back to Milwaukee as an act done *for his own purposes,* and inferentially at least not for the purpose of obtaining a new employment after his wrongful discharge. The facts there are entirely different from those of the instant case. Here the plaintiff's *only* purpose in going to Cripple Creek from Georgetown was to teach in the public schools of that town, and it was clearly for the benefit of the defendant to have her go, as her earnings in Cripple Creek would reduce that much the defendant's liability to her. In the case at bar plaintiff did not recover any amount for moving her family to Cripple Creek. The trial court excluded from evidence the testimony which tended to show that plaintiff had expended $50 in removing her family to Cripple Creek from Georgetown. This ruling was clearly right, if for no other reason than that it had not been pleaded. If allowable at all, it must have been specially pleaded.

It is impossible to ascertain from this record just what method was adopted by the jury in arriving at the verdict of $185.88. The evidence conclusively shows that the unexpired term of the employment was 5 months, and the agreed price was $70 per month, making $350, which measured plaintiff's recovery, and that plaintiff received the total sum of $285 during that time from her new employment. This left a credit due her of $65. The evidence further shows that plaintiff expended, while in Cripple Creek, during the unexpired term, $20 a month more for her living expenses than she would have paid in Georgetown. She was there four months and three weeks, which would make the total amount $95, to which should be added her railroad fare to Cripple Creek, $8, and 70 cents for telephoning to that place accepting the new employment; the total being

$103.70, which, if the jury believed correct, should have been deducted from the $285 she had earned, before subtracting the same from the $350. The amount of $103.70, however, was apparently not allowed by the jury, but only $60 thereof, for if $60 be deducted from the $285, and the balance, $225, from the $350, it will leave a balance of $125, which, with interest at 8 per cent. for 6 years, will amount to just $185.

It is clear that the second trial, and appeal by defendant, has been vexatious and unreasonable. It is also evident that the wrongful discharge of plaintiff caused her, aside from distressing inconvenience and discomfort, a considerable expenditure and outlay in excess of any amount which by law she could recover for the breach. Plaintiff had been teaching in the schools of the Georgetoown district for four years prior to the making of the contract in issue, and it is a fair presumption that she was a competent and faithful employe. She was the support of her mother and sister, who were dependent upon her, and they were settled and keeping house in Georgetown. She was arbitrarily and wrongfully discharged in the midst of winter, but, with enviable spirit, at once set about finding new employment, and succeeded in the short space of one week in securing, at a distant town, like employment to that she had been engaged in. This new employment naturally compelled her to break up her home in Georgeton and move her "family," as she terms it, to the new place.

Her speedy and successful efforts, which resulted in the new employment, were all to the direct financial benefit of defendant, and it is to be regretted that defendant did not magnanimously concede plaintiff the pittance allowed her by the jury for expenses and outlays incurred in and about securing new employment, and increased expenses ensuing therefrom, particularly as no complaint is made against her for inefficiency or insubordination.

The instructions as a whole are free from prejudicial error. The judgment will be affirmed.

*Judgment affirmed.*