BEARD v. READ.

Opinion delivered December 22, 1924.

BROKERS—CONTRACT TO PRODUCE PURCHASER.—Where a real estate broker contracted to make a sale of real property, he has performed his contract by the production of a purchaser financially able to buy and with whom the owner actually makes an enforceable contract of sale, and the failure of the purchaser to carry out the contract does not deprive the broker of his right to commissions.

Appeal from Hempstead Circuit Court; *W. V. Tompkins*, special Judge; affirmed.

*Steve Carrigan*, for appellant.

The plaintiff was entitled to his commission only upon the completion of the sale. 29 L. R. A. (N. S.) 533; 78 N. E. 106; 101 Mass. 257; 3 Am. Rep. 352. Notwithstanding the plaintiff furnished a purchaser ready, willing and able to purchase the property, the sale was not completed and the commission was not earned. 81 Ark. 97; 149 Ark. 188; 78 N. E. 107; 101 Mass. 257; 3 Am. Rep. 352.

*E. B. Downie, O. A. Graves* and *John W. Newman*, for appellee.

Plaintiff, having furnished a purchaser ready, willing and able to purchase the property, was entitled to his commission. 87 Ark. 506; 117 Ark. 593; 132 Ark. 378.

WOOD, J. This is an action by A. C. Read against Nina B. Beard, Sarah Dodge Brandebury and O. L. Beard, to recover the sum of $2,437.50 alleged to be due him as agreed compensation for procuring a purchaser for a large body of lands, embracing about 2,840 acres, in Hempstead County, Arkansas. The plaintiff alleged that, after incurring expense in advertising and showing the lands, he received an offer from H. T. Brown, which he submitted to the defendants on February 11, 1922, and they accepted the offer, and at the same time stipulated to pay the plaintiff as commission for procuring the purchaser the amount above mentioned; that Brown

was ready, willing and able to purchase the land for the sum of $48,750, and offered that amount, which the defendants accepted, and entered into an agreement with Brown for the sale of the property for said sum, and thereafter failed and neglected to convey the lands to the purchaser in accordance with agreement. Plaintiff alleged that the defendants were nonresidents and the owners of the lands which he described in his complaint, and prayed for judgment in the sum of $2,437.50.

An attachment was issued at the instance of the plaintiff, and levied upon the lands described, and a *lis pendens* notice given.

The defendants, in their answer, admitted that they agreed, about September 27, 1921, to allow A. C. Read to sell certain of their lands, situated in Hempstead County, and that he procured one H. T. Brown as a prospective purchaser. They admitted that they offered and agreed to sell the lands, according to their contract with the plaintiff on September 27, 1921, but denied that they agreed to pay the plaintiff a commission of $2,437.50 or any other sum for the sale of defendants' lands to H. T. Brown or any other purchaser, until said sale was consummated and the money actually paid on the purchase price of the lands. They denied that the plaintiff procured Brown as a purchaser for the land at the sum of $48,750, and denied that Brown was ready, willing and able to purchase and pay that sum for the lands. They denied generally that plaintiff ever procured any purchaser for their lands who was ready, willing and able to purchase the same at any time, and denied that they were indebted to the plaintiff in any sum. They alleged that they entered into a contract with the plaintiff on September 27, 1921, under which plaintiff undertook to handle the defendants' lands, which contract is as follows:

"To A. C. Read Real Estate Co.:

"For and in consideration of one dollar, the receipt of which is hereby acknowledged, I hereby appoint you

exclusive agent to make sale of the real property herein described as

"About 3,000 acres located in Hempstead County, Arkansas, in sections 18, 8, 19, 20, 30, 29, 31, 32, containing about 3,000 acres, more or less, all for the price of not less than $20 per acre, upon the following terms: one-third cash, balance secured by mortgage thereon for equal payments 1-2-3 years at 7 per cent.; and you are hereby authorized to accept a deposit to be applied on the purchase price, and to execute a binding contract for sale on my behalf. In case the above described property is sold or disposed of within the time specified, I agree to make the purchaser a good and sufficient warranty deed to the same, and to furnish a complete abstract of title, if required; and it is further agreed that you shall have and may retain from the proceeds arising from such sale five per cent. commission on the above price, and twenty per cent. of all of the consideration for which said property is sold over and above price specified, and, in case said property is sold within said time, either through you, myself or any other person, then in that case I promise to pay you five per cent. on the whole amount for which said property may be sold. This contract to continue until January 1, 1922, and thereafter until terminated by me, giving unto you as agent ten days' notice in writing."

The defendants allege that they were at all times ready and willing to comply with the above contract with Read; that they furnished to plaintiff a complete abstract of title to be turned over to any prospective purchaser; that, by the terms of the contract, they agreed to pay plaintiff five per cent. commission on any sale, which amount plaintiff was to retain from the proceeds of such sale. They alleged that no proceeds had arisen from any sale of defendants' land in Hempstead County by the plaintiff or by any other person. They prayed that plaintiff take nothing by reason of his action.

A. C. Read testified, and introduced in evidence the contract on which he bottoms his action, which is the

same as that set forth in the answer. Witness constituted the A. C. Read Realty Company. He showed the land to Brown, and Brown made a proposition which witness accepted under authority from the owners, and the owners and Brown entered into a contract on February 4, 1922, by which the defendants agreed to sell and Brown to purchase the lands which defendants had listed with witness for sale. Witness introduced the contract, by the terms of which the defendants agreed to sell the lands and certain personal property for the sum of $48,750, $5,000 to be paid in cash upon delivery of the contract, and the balance at the times and on the terms mentioned therein. It was agreed that, should Brown or his assigns fail to make the payments as provided, he would surrender the premises and execute a quitclaim deed transferring the property back to the sellers. It was agreed that Brown should have possession of the premises, and that he would cut no merchantable timber therefrom prior to January 1, 1924. It was stipulated that, at the time of the delivery of the contract, or within a reasonable time thereafter, the defendants should furnish to Brown an abstract of title to the lands. Prior to the delivery of the deed Brown was to insure certain buildings for the benefit of the defendants, and farm the premises in a workmanlike manner, and pay all taxes and assessments against the same. Brown was to take immediate possession and keep the labor on the place during the year 1922. When Brown made the payments and carried out the agreement specified, the sellers were to execute to him a deed. The contract contained the following provision: "This contract and the said notes shall be delivered and the first money paid to the parties of the first part, or their duly authorized representatives, at the office of the A. C. Read Realty Company, Little Rock, Arkansas, and all subsequent payments hereon shall be made to the parties of the first part, or their duly authorized representatives, at such place as may be from time to time designated by them in writing."

The plaintiff testified that his commission would have been five per cent. on $48,750, which the defendants refused to pay. On cross-examination he stated there had never been any proceeds from the sale, but it was not his fault or the fault of the purchaser. The sellers didn't object to furnishing a warranty deed, but they didn't furnish an abstract of title, as they contracted to do, and that was the reason the contract fell down. Witness and his agent, Porterfield, who conducted the negotiations up to the time that defendants and Brown entered into the contract, thought that the title to the lands was all right, but Brown's attorney didn't think it was a merchantable title. Witness used every effort he could to get the attorneys representing the sellers and the buyers together on the contract. The defendants offered to introduce a letter written by Read on March 3, 1922, to Mrs. O. L. Beard, which was to show that Read and his agent, Porterfield, thought that the title to the lands was good. The court excluded the letter, to which the defendants excepted.

The contract between Brown and the sellers provided that Brown was to pay the $5,000 to witness upon delivery of the contract. Brown never paid the $5,000 in cash. Brown saw the contract before the $5,000 was paid. Witness didn't think that he loaned Brown or his attorney one of the two contracts to look over—didn't remember—and didn't think that Brown had one of them at that time. Brown probably had one of the contracts to read, and gave it back to witness in an hour or two after he received it. They had been working on the abstract for several days. Mrs. Beard brought the contracts back, and they were finally executed by Brown in witness' office. Mrs. Beard was there, and Brown refused to go through the deal on account of some defect in the title, and didn't pay the $5,000 as the contract provided. Witness wrote to O. L. Beard, at Cincinnati, on the 17th of February, 1922, in which letter he stated, among other things, that he would take one of Brown's notes for $1,437.50, indorsed by the defendants

without recourse, and that, if the notes were not paid, the plaintiff agreed not to hold the notes as a claim against the property. It was understood then between the plaintiff and the defendants that the plaintiff was to get five per cent. as his commission. The only contention ever made by the defendants was that plaintiff was not entitled to any commission because there had been no proceeds. Mrs. Beard, who handled all the negotiations for the other heirs, was in witness' office on February 15, when Brown signed and acknowledged the contract, and she agreed for witness to have a five per cent. commission on the total purchase price. The letter of February 17, in which witness agreed to take Brown's note for $1,400, referred to the balance of witness' commission, and was dividing Brown's first $3,000 note into two notes, one for $1,562.50 and the other for $1,437.50. Witness never received any commission on the deal. Mrs. Beard put Brown in possession of the land after the contract was signed, and he stayed there for something like a month.

John Newman, the attorney representing Brown in the negotiations between Brown and the defendants, also represented witness in this action. Witness understood that he approved the title to this land for a loan from the Federal Land Bank, and the loan was made upon his opinion.

Mrs. Nina Beard testified for the defendants. She didn't consider that Mr. Read had made a sale of the lands. He got Brown there, and she entered into a contract with him in writing on February 4, which had been introduced in evidence. The contract provided that, at the time the contract was delivered to Brown, he was to pay $5,000; that was never paid. She allowed Brown to go into possession of the farm, after they had made the preliminary agreement which witness made with Brown the first time she was down there on this business. This was before the contract was signed with Brown. She never gave A. C. Read or any member of his firm authority to change the contract by deliver-

ing it to Brown without his paying the $5,000 as pro-
vided therein. It was given to Read with the idea that
he was to hold it in trust until the money was paid.
The contract provides that the commission was to be
paid from the proceeds of the sale of the property. It
also provides that the sellers were to make the pur-
chaser a warranty deed to the property. They did not
refuse to make the deed. They furnished the purchaser
a complete abstract of title, so far as witness knew. Just
before the contract in evidence was signed by the pros-
pective buyer, Mr. Porterfield, who had this tract
of land for sale during the lifetime of witness' father,
assured witness that the title was good—that he knew
it very well. Porterfield represented A. C. Read in the
negotiations. Witness was asked if she signed that
contract relying on what Porterfield said that the title
was good, and the court refused to permit the witness
to answer the question, to which ruling the defendants
duly excepted. Witness stated that defendants had
never brought suit against Brown to enforce the con-
tract of sale with him. She wrote to Read to keep what-
ever securities he had there for awhile until they could
determine what to do. In regard to the division of the
first $3,000 note referred to in the letter of February 17
from Read to Beard, and introduced in evidence, witness
stated that Read was to take that note. She was to have
nothing whatever to do with it. She was anxious to get
home, and they told her if she would sign the contract
they would take good care of her and see that every-
thing was done to get the notes and the money. She
signed the contract only with the idea that the contract
was not complete or would not be in force until this
delivery—or until after the abstract was delivered. It
was not to bind witness in any way until then, and wit-
ness put the papers in Porterfield's and Read's hands
with the understanding that they were to take care of
her the same as a lawyer. They told her she didn't
need a lawyer. She was to have nothing whatever to do
with taking this note transaction as a part of the com-

mission. Witness was to furnish the abstract, and she did so. She left some of them there then. She didn't have them all, but didn't know it when she got there. The rest of them were in the Federal Loan Bank. She left a part of the abstracts and the contract there for them to close the matter up and accept the $5,000, and she sent the rest of the abstracts later.

At the close of the testimony the plaintiff asked the court to instruct the jury to return a verdict in his favor in the sum of $2,437.50, which the court did. The defendants duly excepted to this ruling of the court. The defendants presented prayers for instructions numbered one to eleven, which the court refused, to which ruling the defendants duly excepted. Judgment was entered in favor of the plaintiff in the sum of $2,437.50, from which judgment is this appeal.

The appellants contend that the appellee is not entitled to any compensation under the contract of September 27, 1921, between him and the Brandebury estate, because there was no completed sale; that the third paragraph of the contract shows that there was to be a completed sale, with a payment of $5,000 cash as a condition precedent to the payment of commission; that the commission could only be paid out of the proceeds arising from the sale. We cannot concur in this view of the contract. Construing the contract as a whole, it occurs to us that it was a contract by which Read, the appellee, agreed to make a sale of the property upon the terms therein mentioned, and, for his services in making the sale at the price named, he was to receive a commission of 5 per cent. and 20 per cent. of any consideration above the price specified, and that he was to receive 5 per cent. of the whole amount for which the property was sold, until the agency was terminated by ten days' notice from the seller, whether the sale was made by appellee or by any other person. The language of the contract, when taken as a whole, is nothing more nor less than a contract by which the appellee agreed to furnish a purchaser, ready, willing and able to pay for the lands

described the price named therein, or a greater price, and upon the terms of payment therein mentioned. The contract, as we construe it, comes clearly within the doctrine announced by this court in *Pinkerton* v. *Hudson,* 87 Ark. 506; *Womack* v. *Perkins,* 132 Ark. 378; and many other cases of this court, holding that "where a real estate broker contracts to produce a purchaser who shall actually buy, he has performed his contract by the production of one financially able and with whom the owner actually makes an enforceable contract of sale. The failure to carry out that contract, even if the fault be that of the purchaser, does not deprive the broker of his right to commission."

The undisputed proof in this record justified the court in finding that the appellee had complied with the terms of the contract on his part. He furnished the purchaser, Brown, with whom the appellees entered into the contract of February 4, 1922, for the sale of the lands in controversy. The undisputed testimony shows that the failure to consummate the sale contemplated by that contract was not the fault of the appellee. The undisputed testimony shows that Brown, the prospective purchaser, refused to carry out the contract on his part because of an alleged failure on the part of the other parties to the contract to furnish an abstract of title such as the contract called for. On the other hand, the appellants claim that they did not fail to comply with the contract in that respect. This controversy between Brown and the appellants was no concern of the appellee, inasmuch as the undisputed testimony of Nina B. Beard, who conducted the negotiations for the appellants, shows that the appellants did not undertake to enforce the contract; and the undisputed evidence shows that Brown was financially able to carry out the contract on his part, and that same could have been enforced if he had violated same. The appellee owed the appellants no duty with reference to the enforcement of the contract between the appellants and Brown.

It is unnecessary to discuss in detail the oral testimony in the record. The decision of the cause turns upon the construction of the contract, and we are convinced that the trial court correctly construed the same, and, under the undisputed evidence, did not err in directing a verdict in favor of the appellee. The judgment is therefore affirmed.

McCULLOCH, C. J., (dissenting). The decision of the case turns on the question whether the contract provides for payment of a commission merely on production of a purchaser, or whether a sale must be consummated before a commission is earned. There is no question involved as to bad faith or recalcitrancy on the part of the owner in refusing to accept the purchaser produced by the selling agent. Nor is it shown that the seller had no title. The proof shows only that the attorney for the purchaser pointed out a supposed defect, which the seller was able and willing to cure.

It seems to me that the plain language of the contract provides for the payment of a commission only on consummation of a sale. The initial statement in the contract is that the agent is appointed "to make sale of the real property" described. This means what it says— to make a sale, not merely to produce a purchaser. And this is followed by a statement as to how the commission is to be paid—by retention of the amount "from the proceeds arising from such sale." The agent is authorized to "accept a deposit to be applied on the purchase price and to execute a binding contract for sale." The parties themselves construed the contract to mean one for consummating a sale, not merely to produce a purchaser, for the appellee made persistent efforts to obtain a consummation of the sale and did not claim a commission until the purchaser withdrew without fault on the part of appellant. "Tell me what you have done under a deed and I will tell you what that deed means." *Gauss* v. *Orr*, 46 Ark. 129. In the case of *Robbins* v. *Kimball*, 55 Ark. 414, Chief Justice COCKRILL said that what the parties to a contract did under a contract "is the best guide

attainable for its interpretation.'' The following decisions are directly in point: *Lewis* v. *Briggs,* 81 Ark. 101; *Vaughan* v. *Odell,* 148 Ark. 123; *Coleman* v. *Edgar Lbr. Co.,* 153 Ark. 275; *Phanz* v. *Hamburg,* 83 Ohio St. 1, 29 L. R. A. (N. S.) 533; *Munroe* v. *Taylor,* 191 Mass. 483, 78 N. E. 106.

My conclusion is that the appellee failed to show that he was entitled to a commission—at least that the issue should have been submitted to the jury.