JIM ORR AND ASSOCIATES, INC. *v.* Tilmon WATERS, Beverly Brown and David Huso

89-116                                              773 S.W.2d 99

Supreme Court of Arkansas
Opinion delivered July 17, 1989

*Sexton Law Firm, P.A.*, by: *Sam Sexton, Jr.*, for appellant.

*Wood Law Firm, P.A.*, by: *Arnold N. Goodman*, for appellee Tilmon Waters.

*Mitchell, Williams, Selig & Tucker*, by: *Byron Freeland* and *Abraham W. Bogoslavsky*, for appellees Beverly Brown and David Huso.

JOHN I. PURTLE, Justice. Jim Orr and Associates, Inc., appeals the decision of the Pulaski County Circuit Court awarding Tilmon Waters damages in the amount of $119,700.00 and dismissing its third party complaint against Beverly Brown and David Huso. It is argued that the trial court erred in: (1) its finding that the appellant did not use due diligence at the time of

the purchase of the insurance agency; (2) its assessment of damages; and (3) its dismissal of the third party complaint. We agree that the court erred in its assessment of damages. Otherwise we find no prejudicial error.

The appellee, Tilmon Waters, owned and operated a credit life insurance business for a number of years. On April 1, 1985, he sold his business to the appellant, a broker and agent for Omaha Financial Life, a subsidiary of Mutual of Omaha. When Waters sold his business to Jim Orr and Associates, Inc., he entered into a separate contract which provided for the retention of appellee Waters and his wife as consultants at a salary of $1,900 per month for the life of the survivor.

During the time Waters operated the company, he entered into agreements with various automobile dealerships, whereby the dealership selling an automobile would receive a commission by placing the credit life insurance with Waters. The commissions paid the automobile dealers as the producing agents varied.

Waters' office manager was appellee Beverly Brown, who continued in the same capacity with the appellant after the sale. On January 27, 1986, Brown wrote letters to the various agents producing credit life insurance, requesting that each execute a statement that their "agent of record" was David Huso and Associates. Some of those who received the letter sent copies to the appellant, Jim Orr and Associates, which commenced an investigation of the matter. On March 10, 1986, Brown sent another letter to the agents advising them that Orr and Waters were going out of business and that appellee David Huso would be taking over the credit life operation. She stated that she would continue to handle the business as in the past and requested that all correspondence be sent to her at her home address. The letters to the agents were written on the appellant's stationery.

Subsequent to the sale agreement, Orr learned that Waters' commission and production reports, which had been shown to him prior to the sale, inaccurately reflected the commissions paid to agents. Actual commissions were higher than the reports indicated. The difference in commissions paid to the producing agents resulted in less income to the appellant than anticipated. After investigation, the appellant terminated the consulting agreement with Waters, who sued to recover unpaid consultant fees for the

rest of his life expectancy. (Mrs. Waters was deceased at the time the case was tried.) The appellant counterclaimed, alleging breach of contract.

Orr filed a third party complaint against Brown and Huso for interference with his contractual relationship with the producing agents. The trial court found that Orr, as a "sophisticated" businessman, had failed to investigate the transaction thoroughly before making the purchase of the agency and that he had failed to protect himself by not making a proper investigation. The court awarded damages to Waters, limited by the complaint, in the amount of $119,700.00 and dismissed the suit against Brown and Huso.

■ We first discuss the appellant's argument concerning the matter of sufficiency of the evidence to support the trial court's findings of fact. The trial court was presented evidence relating to the claim by Orr that Waters had misrepresented the business to him at the time of the sale agreement. Orr testified that the accounting books and checkbooks of the company were not available for examination at the time of the closing of the purchase agreement. Waters and Brown testified that the books were readily available for Orr to examine but that he did not desire to do so. This dispute is based primarily on the contention that Waters did not reveal to Orr the amount of commissions paid to each agent; further, that the true amount was not revealed by the monthly report sent to the home office of the insurance company. Without repeating all of the facts in detail, we can say with confidence that there was enough disputed evidence before the court to sustain a judgment for either party on this issue. Furthermore, the trial court's finding that Waters had not breached the contract is not clearly erroneous. Therefore, we will not reverse on this point.

We now discuss the issue concerning the damages awarded by the trial court. The parties and the trial court acknowledge the existing law of Arkansas as announced in *School District No. 45 Pope County* v. *McClain*, 185 Ark. 658, 48 S.W.2d 841 (1932). That case involves the doctrine of anticipatory breach of contract. *School District No. 45* involved the breach of a contract of employment of a teacher by the Board of Education. The opinion stated:

On the appeal of appellee, all that need be said is that she was not entitled to recover the full amount she would have earned under the contract at the time this case was tried because she may have since that time obtained other employment which would reduce the amount of her recovery subsequent to the trial.

In the present case the trial judge quite frankly stated that he did not agree with the result in *School District No. 45* and proceeded to award damages based upon what appellee Waters would have received to the end of the contract. The end of the contract in the present case was based upon insurance company mortality tables. The appellant urges us to abide by our precedent, while Waters insists that we should overrule *School District No. 45* and its progeny. This doctrine, whatever its fate in other jurisdictions, has never been overturned in Arkansas. The doctrine of anticipatory breach of a contract of employment was very clearly stated in *Van Winkle* v. *Satterfield*, 58 Ark. 617, 25 S.W. 1113 (1894), where it was established that a servant or employee who has been wrongfully discharged by his employer before the end of the contract has three options for recovery:

> "First, he may consider the contract as rescinded, and recover on a *quantum meruit* what his services were worth, deducting what he had received for the time during which he had worked. Second, he may wait until the end of the term, and then sue for the whole amount, less any sums which the defendant may have the right to recoup. Third, he may sue at once for breach of the contract of employment."

The opinion went on to state that if the third remedy was his choice:

> [H]e can recover the damages which he has sustained down to the day of the trial, which is limited to a compensation for the injury suffered by the breach of the contract. The loss of the wages which his employer agreed to pay him constitutes the injury. What, therefore, he has suffered by reason of the loss of wages, as a rule, is the amount of the damages he is entitled to recover.

This doctrine has been followed by the Arkansas courts down to

the present time. Although we may be in the minority of jurisdictions holding to this doctrine, we find no justification for overruling it at this time.

■ We now consider whether the third party complaint should have been dismissed. The third party complaint was based on the theory of interference with a business expectancy or contract of employment. The tort of interference has been defined by this court in *Walt Bennett Ford, Inc.* v. *Pulaski County Special School District*, 274 Ark. 208, 624 S.W.2d 426 (1981):

> The fundamental premise of tort — that a person has a right to pursue his valid contractual and business expectancies unmolested by the wrongful and officious intermeddling of a third party — has been crystallized and defined in Restatement, Torts § 766 . . . .

> The basic elements going into prima facie establishment of the tort are (1) existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damages to the party whose relationship or expectancy has been disrupted.

274 Ark. 213-214.

■ The two letters written by Beverly Brown, the former office manager for Tilmon Waters who became office manager for Jim Orr and Associates, were sufficient to present a fact question on this issue. However, the trial judge's finding that the appellant suffered no damages as a result of the activities of Brown and Huso is not clearly erroneous. Joe Works, the producer of half of Waters' commissions prior to the sale, testified that he quit doing business with Orr because he was dissatisfied with Orr's services. He testified that he transferred his credit life business to Brown and Huso because he was satisfied with the services Brown furnished. Other producers testified to the same effect. Moreover, Orr did not have contracts with the producing agents. Neither did Waters. Although reasonable minds could have reached a different result, the trial court's decision on this question is not clearly erroneous.