[L. A. No. 267.  Department Two.—December 13, 1897.]

SAMUEL K. LINDLEY, Respondent, v. ELON G. FAY et al.,
Appellants.

REAL ESTATE BROKER—COMMISSIONS UPON SALE—REASONABLE COMPENSA-
TION — PLEADING — GENERAL DEMURRER TO COMPLAINT — AMBIGUITY —
TERMS OF EMPLOYMENT.—Where the complaint in an action by a real es-
tate broker for the recovery of commissions upon a sale of real estate
alleged employment of plaintiff by defendants, to sell certain lands, and
an agreement to pay him a reasonable compensation for his services,
provided he should succeed in selling the same on terms satisfactory to
the defendants, and that he found a purchaser who entered into an
agreement in writing·with the defendants for sale of the lands, in which
writing defendants also agreed to pay the plaintiff the regular commis-
sions out of the first moneys received, the question whether the com-
plaint is ambiguous or uncertain as to the terms of the employment
is not raised upon general demurrer to the complaint.
ID.—CONSTRUCTION OF COMPLAINT—CONTRACT ALLEGED—RECITAL IN WRITTEN
AGREEMENT—VARIANCE.—Only one contract is averred in such complaint,
and that is to find a purchaser upon terms satisfactory to the defend-
ants, for a reasonable compensation, and the statements as to the con-
tents of the written agreement between the purchaser and the defendants
is a mere recital, which does not help out or vary the terms of the alleged
employment; and where there is no proof of the contract alleged, the
contract recited in the writing is not, so far as concerns the compensa-
tion, the contract averred in the complaint.
ID.—CONTRACT TO PAY COMMISSIONS OUT OF FIRST MONEYS RECEIVED—FAIL-
URE TO CONSUMMATE CONTRACT.—Under a written contract to pay the
commissions of a broker out of the first moneys received, the broker is
not entitled to compensation when he finds a purchaser ready, willing,
and able to purchase on the prescribed terms; but there must be a sale
and a first payment to entitle him to recover; and where the sale was
not consummated, by reason of the purchaser not accepting the title,
and the alleged contract was not executed so as to bind the parties, and
no sale was in fact consummated, and the purchaser invested elsewhere,
the broker can recover nothing.
ID.—ORDINARY CONTRACT FOR COMMISSIONS—STATUTE OF FRAUDS—MEMORAN-
DUM.—Under an ordinary agreement that a broker is ˙entitled to com-
missions when he furnishes a purchaser, able, ready, and willing to buy,
a memorandum in writing, signed by the vendor and disclosing the
terms of the contract, is sufficient to satisfy the statute of frauds, though
the contract of purchase was not so executed as to bind the parties.

APPEAL from a judgment of the Superior Court of Los An-
geles County and from an order denying a new trial.  J. W.
McKinley, Judge.

The facts are stated in the opinion of the court.

J. S. Chapman, for Appellants.

Murphy & Gottschalk, for Respondent.

TEMPLE, J.—This action was brought to recover a broker's commission for the sale of real estate. The complaint charges that on or about April 17, 1894, defendants employed plaintiff to sell certain lands, and agreed to pay him a reasonable compensation for his services, provided he should succeed in selling the same on terms satisfactory to defendants.

It is then averred that he found a purchaser on the 18th of April, 1894, who was ready, willing, and able to purchase on terms satisfactory to defendants. The purchaser, J. E. Carr, on that day entered into an agreement in writing with defendants whereby they agreed to sell the land for thirty-six thousand dollars, and in said writing defendants also agreed to pay plaintiff the regular commissions out of the first moneys received.

Then follows an allegation that defendants, without cause or excuse, refused to carry out their agreement with Carr, but returned to Carr his note for five hundred dollars, which had been put up by him as a forfeit. Also that the regular commission for finding a purchaser for a lot of the kind and description, and for the purchase price aforesaid, is nine hundred dollars, which is a reasonable compensation for the service.

A general demurrer was interposed to the complaint, and under it defendants now attempt to raise the point that the complaint is ambiguous or uncertain as to the terms of the employment. This objection, however, is not raised by a general demurrer.

The defendants denied the employment; that any services were rendered by plaintiff; that any sale was made to Carr; and, also, that any written contract was executed in which they agreed to pay plaintiff commissions. But the defendants admit that on the 17th of April, 1894, plaintiff came to defendants with J. E. Carr for the pretended purpose of purchasing the property and did enter into negotiations for that purpose, and did attempt to procure an agreement from defendants that they would pay him a commission in the event of a sale to Carr. But defendants deny

that they entered into any agreement in writing, or into any kind of an agreement to pay commissions except in case of a sale, and that was not in writing and did not bind the defendants. They then aver that no sale was ever made to said J. E. Carr.

The evidence shows no valid agreement employing plaintiff to find a purchaser upon the terms set out in the complaint. There was in fact no agreement in writing by which plaintiff was employed to negotiate a sale in any terms whatever. The statute of frauds is pleaded, and one question here is whether a contract has been made out under section 1624 of the Code of Civil Procedure.

It appears that plaintiff called upon defendants, with J. E. Carr, on the 17th of April, 1894, to ascertain if the property was for sale and for what price and upon what terms. They were informed by Mr. Fay that he would sell for thirty-six thousand dollars. Mr. Carr replied that he had understood that the property could be had for thirty-two thousand dollars, and he would consider the matter. The next day the two called again and then an agreement was reached, which was reduced to writing and signed by the defendants. The contract was in form *inter partes.* The price to be paid was thirty-six thousand dollars; five hundred dollars was to be paid on signing the contract, three thousand five hundred dollars on delivery of deed, and thirty-two thousand dollars, with interest, ten years after the execution of the deed. Defendants were to furnish an abstract, and agreed "to allow the party of the second part five days to examine same after certificate, abstract of title is delivered; and further agree to pay as a commission to said S. K. Lindley the sum of regular commissions dollars out of the first money received."

The parties of the first part agreed to deliver to the party of the second part, within five days after the delivery of the abstract, a bargain and sale deed conveying the property free and clear of all encumbrances. It was also stipulated that if the title failed to prove good the contract was void, and Lindley should return the first payment to Carr.

If the party of the second part failed to make the remaining payments according to the agreement, Lindley was "authorized and empowered to declare said payment forfeited without recourse." It was nowhere provided that Carr should execute a

note or mortgage for the deferred payment of thirty-two thousand dollars, although an absolute deed was to be delivered at once.

This writing was signed by defendants, but not by Carr, and according to Lindley's testimony was handed to Carr, who handed to Mr. Fay a check for five hundred dollars.

Mr. Fay denies that the paper was handed to Carr or that there was any understanding that it was delivered. He also claims that he understood that Carr was to sign it, and that either it should be executed in duplicate, so that each party should have a copy, or that Lindley should retain it for both parties. Upon this matter the court found in favor of the plaintiff. This finding is attacked as not supported by the evidence.

All agree that almost as soon as the defendants had signed the writing, and before they had separated, Mr. Fay stated that he did not like the provision by which the payment of the entire sum of thirty-two thousand dollars was deferred ten years. He desired annual payments. After some discussion, Mr. Carr assented to the change, and attempted to alter the instrument accordingly. He found difficulty in making the change, and said he would fill out a new blank. Mr. Fay then took the one he had signed and threw it into the fireplace. The new one was filled out, embodying the changes. The defendants signed that also. When signed, however, Mr. Fay put it into his pocket and said he desired to consult an attorney before he delivered it, and promised to meet the other parties the next morning at Mr. Lindley's office. Mr. Carr made no objection to this course. On the next day the defendants refused to go on with the trade.

There was no written contract of employment, and there is no note or memorandum of any such contract, unless the reference to commissions in the writing signed by the defendants, as above stated, constituted such memorandum. Waiving the question whether such a contract was executed so as to bind the parties, or conceding that it was, the contract which it tends to prove is not, so far as concerns the compensation, the contract which is averred in the complaint. Only one contract is averred, and that is to find a purchaser upon terms satisfactory to the defendants, for which plaintiff was to be paid a reasonable compensation. The statement as to the contents of the writing between Carr

and defendants is a mere recital in an allegation showing that Carr contracted to purchase on terms satisfactory to defendants. It does not help out or vary the averment as to employment.

Ignoring the question as to the pleading, however, the evidence shows no right of action in the plaintiff. It tends to show an agreement to pay commissions out of the first money received, and no money has ever been received. Under such a contract, the broker is not entitled to compensation when he finds a purchaser ready, willing, and able to purchase on the prescribed terms. There must be a sale and a first payment to entitle him to recover. It is so nominated in the bond.

If we assume that it is a case in which the defendants have agreed to pay out of a specified fund, and that the right to recover is based upon the fact that it is because of the wrongful act of the defendants that there is no such fund, it does not appear, either from the pleadings or the evidence, that a first payment could have been received by the defendants. It was stipulated in the alleged agreement that if the title proved bad the contract of purchase should be void. Carr never accepted the title, and it was not shown to be good. If the sale failed because the title was defective there would be no first payment, and the plaintiff could recover nothing.

But the alleged contract was never executed so as to bind anyone. It is not necessary to repeat the acts which it is claimed constituted a delivery. They were certainly at the best equivocal, and the parties separated, mutually agreeing that no contract had been executed; that Fay was to consult his lawyer, and they were to meet on the next day to close the matter. There was, therefore, no sale, and according to the terms of the contract of employment, if we concede that one was proven, the plaintiff was entitled to nothing.

Had the agreement been the ordinary one that the broker is entitled to his commissions when he furnishes a purchaser able, ready, and willing to buy, it might be argued that the memorandum was sufficient to satisfy the statute of frauds, even though the contract of purchase was not so executed as to bind the parties.

The note or memorandum need not be a contract or a writing intended by the parties as an obligation, but only a note or mem-

orandum thereof signed by the party to be charged.     Under such a contract as was made in this case there must have been a sale. The terms of the proposed sale were not agreed upon in any contract between the broker and the seller, except that they were to be satisfactory to the seller and the commissions were to come out of the first money paid.     Under such circumstances, a refusal of the vendor to complete a sale which he at first said was satisfactory did not make him liable.     He did not bind himself to his broker that he would sell at all, and his failure to complete the sale did not give plaintiff a right of action.     Even had the writing been delivered, it is questionable whether, under the circumstances of this case, the defendants might not have rescinded with the consent of the vendee, and thus have defeated the claim of plaintiff.     Apparently, Carr now acquiesces in the rescission. He is not insisting upon the sale, and there was testimony to the effect that failing to get this property he invested elsewhere.

The order is reversed and the cause remanded.

Henshaw, J., and McFarland, J., concurred.