**OPERATORS' OIL CO. v. BARBRE et al.**
No. 781.

Circuit Court of Appeals, Tenth Circuit.
July 13, 1933.

M. H. Silverman and C. H. Rosenstein, both of Tulsa, Okl. (Henry L. Fist, of Tulsa, Okl., and S. K. Bernstein, of Oklahoma City, Okl., on the brief), for appellant.

John Barry, of Oklahoma City, Okl. (Hayes, Richardson, Shartel, Gilliland & Jordan, of Oklahoma City, Okl., and D. Haden Linebaugh, of Muskogee, Okl., on the brief), for appellees.

Before LEWIS and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

McDERMOTT, Circuit Judge.

Upon a trial without a jury, judgment was rendered in favor of appellees for $31,-313.84 on account of commissions alleged to have been earned for negotiating a contract for the sale of oil. The suit is upon a written contract of date January 9, 1931, which recites that the appellant on January 7th contracted in writing to sell to the Continental Oil Company a million barrels of common stock Oklahoma City crude oil, which contract was negotiated by appellee Barbre; that for the purpose of compensating him for his services in negotiating and consummating said contract of sale, appellant "agrees to pay second party, from the sale of oil to the said Continental Oil Company, when and as soon as paid first party," a percentage "of the posted market price received by first party." Under the sales contract, deliveries of the oil were to be in installments and in accord with the proration laws of Oklahoma. Except for an insignificant sum, later paid, recovery was sought for commissions on oil which was neither delivered, nor due to be delivered, when the action was filed. The petition alleges an anticipatory breach of the sales contract, in that appellant refused further to comply with its terms. The defenses raised by the answer are (a) that the commissions were not earned until the oil was delivered and paid for; (b) that, in any event, the suit was prematurely brought; and (c) that further performance by appellant was prevented by the interposition of vis major, to wit, the receivership of the Sunray Oil Company, whose oil was the subject matter of the sale.

Upon the trial certain facts were stipulated, subject to relevancy, among them being the various contracts to which reference will be hereafter made. The contract negotiated by Barbre between appellant and the Continental Oil Company discloses that the Continental agreed to buy specific oil, to wit, common stock Oklahoma City crude oil from

859

leases owned by the appellant or the Sunray Oil Company, or in which either had an interest. The parties stipulated that appellant owned no oil or gas leases in the Oklahoma City field or elsewhere, either at the time the contract was entered into or since; that oil from the Sunray leases was delivered to the Continental in accordance with the contract, and commissions paid thereon, until October 24, 1931, on which date a receiver for the Sunray Oil Company was appointed by the United States District Court; that deliveries thereafter were not made by the receiver because of an order of the court of his appointment. At that time there remained undelivered 278,145 barrels under the contract. Appellees supplemented this stipulation with testimony that the Continental Oil Company was ready, able and willing to comply with its contract to purchase the oil in question.

At the close of appellees' case, appellant moved for judgment upon the various grounds disclosed by its answer. This motion was denied, and the error, if any, was waived by the introduction of testimony thereafter. Thereupon the appellant offered evidence which disclosed generally this state of facts: Appellee Barbre solicited the Sunray Oil Company to pay him a commission for selling a million barrels of Sunray oil; the Sunray agreed to pay him a commission of 12½ per cent therefor if a satisfactory contract could be consummated. Thereupon the question arose as to a method of handling the matter so that the owners of royalty interests, for whom the Sunray had no authority to contract, should bear their share of Barbre's commission. Another complication arose because the buyer to whom Barbre proposed to sell the oil, the Continental, would not purchase oil under the posted price. It was suggested that the deal might be handled by using the appellant as an intermediary between the Sunray and the Continental. Barbre and an officer of the Sunray then went to Ponca City and discussed the proposed contract with Mr. Bruce, vice president of the Continental. Mr. Bruce stated that he must know from what leases the oil which he was contracting to buy would be produced, because of the proration laws of Oklahoma. The tentative contract was modified by limiting the agreement of the Continental to the purchase of oil from leases owned either by appellant or the Sunray Oil Company, or in which either had an interest. Since it is conceded that appellant owned no leases, it is entirely clear that the agreement of the Continental was to purchase oil from the Oklahoma City leases of the Sunray Oil Company and no other. After these negotiations between Barbre, the Sunray, and the Continental, the matter was taken up with appellant, and the contract between appellant and the Continental was entered into. The appellant is a pipe line company, not engaged in the production of oil, and it fairly appears from the evidence offered that the only interest which appellant had in this transaction was to procure its normal charges for transportation of the oil. It may be observed that appellant already had a contract with the Sunray to transport this oil. The offered testimony further discloses that as a part of the transaction, a complementary contract was entered into between appellant and the Sunray, by which the Sunray agreed to deliver to appellant oil in the same quantities, at the same times, under the same conditions, and at the same price (with a differential for commission and transportation charges) as was provided in the contract between appellant and the Continental. It also appears that the Sunray guaranteed the performance by appellant of its contract with the Continental, and also guaranteed the performance of the commission agreement sued on in this action.

This evidence was received by the trial court subject to objection; the objection was later sustained. The judgment rendered is predicated upon the assumption that if the contract had been carried out, 9,000 barrels of oil could have been delivered under the proration laws of Oklahoma up to November 2, 1931; that 150,000 barrels of oil could have been delivered between November 2, 1931, and April 1, 1932; and that after April 1, 1932, 119,145 barrels of oil could have been delivered. In some way, not explained by the record, the commission for the last item was figured, not upon the then posted price of the Carter Oil Company as provided in the contract, but upon a price posted by the Continental Oil Company.

Appellees have moved to dismiss the appeal or affirm the judgment on the ground that the appellant did not move the trial court for judgment in its favor at the close of all the evidence. The appeal cannot be dismissed on this account. The failure to interpose such a motion precludes only a consideration of the sufficiency of the evidence to support the judgment. 28 USCA § 875; White v. United States (C. C. A. 10) 48 F.(2d) 178. Errors appearing on the record proper, and rulings of the court in the progress of the trial are open for consideration by the express terms of the cited statute.

■■ The principal controversy between the parties is over the construction of the commission contract. Appellant contends that it did not agree to pay any commissions except from the proceeds of the sale of oil to the Continental when it received them, and that its failure to receive such proceeds was through no fault of its own. Barbre, on the other hand, contends that his full commission was earned when the sales contract was signed; that he cannot be deprived of his commissions by the refusal of the appellant to deliver the oil, no matter whose the fault; that the agreement to pay commissions "from the sale of oil * * * when and as soon as paid first party" fixes the time of payment only, and is not a condition upon the obligation. A careful scrutiny of the commission contract raises such a serious question as to the intention of the parties, that we are of the opinion that the court erred in excluding the evidence offered by appellant. In the construction of any contract, the court may look to the surrounding circumstances in order to avail itself of the light which the parties possessed when the contract was made. Merriam v. United States, 107 U. S. 437, 2 S. Ct. 536, 27 L. Ed. 531; Brawley v. United States, 96 U. S. 168, 173, 24 L. Ed. 622; United States v. Bethlehem Steel Co., 205 U. S. 105, 118, 27 S. Ct. 450, 51 L. Ed. 731; United States v. Peck, 102 U. S. 64, 26 L. Ed. 46; Jones on Evidence (3d Ed.) § 450; Wigmore on Evidence, §§ 2470, 2471. One of such surrounding circumstances is the contract between appellant and the Continental; it was received in evidence as proof of services rendered and for what light it might throw upon the commission contract; but it is not the contract in suit, and proof of the negotiations leading up to its execution does not vary or contradict the contract sued upon; such negotiations are admissible for the same reason as the contract itself is admissible, as part of the circumstances against the background of which the commission contract was made. Sigua Iron Co. v. Greene (C. C. A. 2) 88 F. 207; Lee v. Adsit, 37 N. Y. 78; Harriss, Magill & Co. v. Rodgers & Co., 143 Va. 815, 129 S. E. 513; Nissen v. Sabin, 202 Iowa, 1362, 212 N. W. 125; Wigmore on Evidence, § 2446.

■■ If a contract is ambiguous, negotiations leading up to its execution are admissible to ascertain the intention of the parties. Williston on Contracts, vol. 2, § 630. This general rule is not controverted, but appellees insist that there is no ambiguity in the commission contract. If this argument were made by appellant, it would be more understandable. By the terms of the contract, appellant agreed to pay a commission "from the sale of oil * * * when and as soon as paid first party." The amount of the commission to be paid is figured upon the "price received by first party." Appellee Barbre insists that these words do not mean that a commission is not earned until the oil is paid for, but are used only to fix the time when it is to be paid. The argument is that the commission was earned when the contract was signed; but there is no legal objection to an agent's commission being contingent upon performance of the negotiated contract. Fuller v. Bradley Contracting Co., 183 App. Div. 6, 170 N. Y. S. 320, affirmed, 229 N. Y. 605, 129 N. E. 925; Lindley v. Fay, 119 Cal. 239, 51 P. 333. Conceding that the contract is susceptible to the construction contended for by appellees, it certainly is true that it is capable of being construed as meaning what it says. Furthermore this entire transaction is so unusual that an explanation is demanded. It is unusual for a pipe line company to agree to deliver oil from specific leases in which it has no interest, and for the owner of the leases from which the oil is to be sold to decline to enter into a contract to sell the oil to a purchaser, but to guarantee the performance of a contract by a third party to deliver that oil. The peculiar circumstances disclosed by the record are amply sufficient to require a searching inquiry into all of the facts to discover the actual intent of the parties. If the trial court had received and considered this evidence, it is entirely probable that the conclusion would have been reached that the appellant, owning no leases and with no financial interest in the transaction except its carrying charges, acted only as a friendly intermediary in the transaction between the Sunray and the Continental, and that the parties intended that appellant should do no more than to pay the commission when and if the Sunray delivered the oil and the Continental paid for it. The evidence offered should have been received and considered; its exclusion was prejudicial error for the reasons stated.

■ If the contract should be construed as entitling Barbre to commissions without regard to performance, then the petition discloses that the action was prematurely brought. Under that construction, Barbre had fully performed when the contract of purchase was signed; nothing remained to be done under the commission contract but to pay the money when due. The petition discloses that full performance of the sales con-

tract was not then due; it declares on the refusal of the appellant to further comply with its sales contract as an anticipatory repudiation. The rule that permits an action for the anticipatory breach of an executory contract is of recent origin, and is an exception to the ordinary rule that action may not be brought until performance is due. The reason for the rule announced by Lord Campbell in Hochster v. De la Tour, 2 El. & Bl. 678, is that it would be unfair to require the promisee to perform on his part when the promisor has stated that he will not perform when the time comes. In Roehm v. Horst, 178 U. S. 1, 20 S. Ct. 780, 44 L. Ed. 953, the court says that where the consideration from the promisee has passed, where there are no mutual obligations, the rule does not apply. In Central Trust Co. v. Chicago Auditorium Ass'n, 240 U. S. 581, 36 S. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580, the court refers to the rule as applicable to "executory contracts." In Moore v. Security Trust & Life Ins. Co. (C. C. A. 8) 168 F. 496, 503, certiorari denied 219 U. S. 583, 31 S. Ct. 469, 55 L. Ed. 346, Judge Sanborn states the rule "applies only to actions on contracts that are mutually executory;" that it does not apply "where the party of one part has completely executed the contract and it is executory only upon the part of the other party." To the same effect is Judge Thayer's opinion in Washington County, Neb., v. Williams (C. C. A. 8) 111 F. 801. In the Restatement of the Law of Contracts by the American Law Institute, vol. 1, p. 475, § 318, the rule is said to be inapplicable where there has been "full performance by one party," and (p. 477, § 318) that "there must be some dependency of performance in order to make anticipatory breach possible." See Williston on Contracts, vol. 3, § 1296. The case in hand affords a striking example of the soundness of the general rule, for when this suit was filed the sum sought to be recovered depended upon three factors then unknown, to wit, the amount of oil which the leases might produce, the amount which the Corporation Commission would permit to be taken, and the price of oil on dates then in the future. It is no answer to suggest, as do appellees, that another contract, to which appellee Barbre was not a party and which is not in suit, was mutually executory. Under appellees' construction, nothing remained to be done under the commission contract except to pay the commissions when the oil was or should have been delivered. A suit before that time was premature.

Since the judgment must be reversed, one other proposition discussed in the briefs should be noticed. The parties have stipulated that the receiver of the Sunray, upon order of the court, declined to carry out its contract with appellant. Appellant contends that it is excused from further performance of its contract with the Continental because performance was made impossible by such order since the only oil which the Continental contracted to buy was that from leases of the Sunray. Although the sufficiency of the evidence to support the judgment is not presented by this record, it may serve a useful purpose to state our conclusion upon the point so thoroughly explored in the briefs.

Since the action is upon the commission contract and not the sales contract, we are not confronted with the defense of impossibility of performance of the contract sued on. The appellant is not prevented by court order from paying Barbre his commissions. The proposition comes into this case, however, in this wise: Even if the contract is construed as appellant contends it should be, Barbre could not be deprived of his commission by the unjustified refusal of appellant to perform its contract with the Continental. Was there a legal justification for the refusal of appellant further to perform its sales contract? In the absence of words denoting an intent to assume the risk of a supervening impossibility of performance occasioned either by the destruction of the subject matter or the interposition of a law forbidding or preventing performance, a promisor is freed from liability for nonperformance by such happenings. Holmes v. Montauk Steamboat Co. (C. C. A. 2) 93 F. 731; Ontario Deciduous Fruit Growers' Ass'n v. Cutting Packing Co., 134 Cal. 21, 66 P. 28, 53 L. R. A. 681, 86 Am. St. Rep. 231; International Paper Co. v. Rockefeller, 161 App. Div. 180, 146 N. Y. S. 371; The Kronprinzessin Cecilie, 244 U. S. 12, 22, 37 S. Ct. 490, 61 L. Ed. 960; Thompson v. British Berna Motor Lorries, 33 Times Law Review, 187; Berthoud v. Schweder, 31 Times Law Review, 404; Williston on Contracts, vol. 3, § 1948; South Memphis Land Co. v. McLean Hardwood Lbr. Co. (C. C. A. 6) 179 F. 417. If further performance is impossible because of the receivership or bankruptcy of the promisor, his estate must respond in damages for the breach. Central Trust Co. v. Chicago Auditorium Ass'n, 240 U. S. 581, 36 S. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580; Western Drug Supply Co. v. Board of Administration, 106 Kan. 256, 187 P. 701, 12 A. L. R. 1074. And so if the receivership of a third party is

862

brought about by the connivance, aid or fault of the promisor. People v. Globe Ins. Co., 91 N. Y. 174. But where performance is rendered impossible by proceedings in a receivership of a third party, for which the promisor is in no wise responsible, performance by the promisor is excused. Moller v. Herring (C. C. A. 5) 255 F. 670, 3 A. L. R. 624; Kansas Union Life Ins. Co. v. Burman (C. C. A. 8) 141 F. 835, 848; Williston on Contracts, vol. 3, § 1939. Mr. Williston concludes his discussion of the question with these words:

"Where, however, the proceedings which interfere with the performance of the promise are based on no fault of the promisor there seems no reason why the interference should not be an excuse, unless the circumstances surrounding the formation of the contract are such as to indicate that the possibility of such interference was recognized and the risk of it assumed by the obligor."

In the Restatement, Contracts, § 458, the rule is stated as follows:

"A contractual duty or a duty to make compensation is discharged, in the absence of circumstances showing either a contrary intention or contributing fault on the part of the person subject to the duty, where performance is subsequently prevented or prohibited

"(a) By the Constitution or a statute of the United States, or of any one of the United States whose law determines the validity and effect of the contract, or by a municipal regulation enacted with constitutional or statutory authority of such a State, or

"(b) By a judicial, executive or administrative order made with due authority by a judge or other officer of the United States, or of any one of the United States."

These authorities recognize the fact that the power of government exercised by the judicial branch is as insuperable an obstacle to performance as the power of government exercised through the legislative branch.

Whether a promisor intends to assume the risk of inability to perform so occasioned must be determined from the contract and, if need be, from the surrounding circumstances.

Appellees' contention that appellant might perform by acquiring leases ignores the fact, made clear by the excluded evidence, that the subject matter of the contract was oil from the leases of the Sunray.

The interests of appellee the First National Bank and Trust Company of Oklahoma City are subject to the rights of Barbre.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.