JEFFERSON STANDARD LIFE INSURANCE COMPANY *v.* SLAUGHTER.

4-3680

Opinion delivered February 18, 1935.

*Owens & Ehrman* and *J. M. McFarlane,* for appellant.

*M. L. Reinberger* and *Arnold Fink,* for appellee.

BAKER, J. This suit was filed and tried in the circuit court of Jefferson County against the appellant for an anticipatory breach of the total and permanent disability clause of a policy of life insurance. The appellee suffered an accident from which he claims total and permanent disability, and, upon failure of the insurer to pay, suit was filed, not for amounts contracted to be paid by reason of the accident, but for the alleged breach of contract of insurance. Plaintiff was seeking to recover the present value of the aggregate amount that would ultimately be payable to him as monthly installments or benefits accruing according to the terms of the policy.

The accident occurred on July 8, 1933. By a gunshot wound, the insured lost the use of his left arm. In

November of that year, or in the early part of December, he notified appellant of his injury. Premiums were paid monthly to and including February of 1934. The last several premiums, however, were paid by a sister of the appellee, but without his consent. The appellant in its first answer admitted all of the facts alleged, except the fact of total disability. An examination was made of the insured, for the insurer, prior to the time of the trial, and at that time the total disability of the appellee was admitted, and appellant offered to pay or confess judgment for the amount of benefits which had accrued to that date, but denied that appellant was liable for an anticipatory breach of the contract of insurance.

The settlement of the first question in the case, as to whether or not appellee had the right to recover for the alleged anticipatory breach of the contract, will determine the only other question,—that of the right of recovery of the penalty and attorney's fee.

Any other facts that may be pertinent will appear in the opinion. It may be said, however, there is no serious dispute as to any of the facts. There is, however, a disagreement, as between the parties as to the interpretation or meaning which should be given some of the correspondence, particularly a letter upon which the appellee relies, to a great extent, to support his contention that the contract was breached by the insurer.

It may be helpful to examine into some of the authorities in order to determine the rule announced by this court in suits of like character and apply, as far as we may, the principles involved to aid us in our interpretation of the facts disclosed by this record.

Litigation in this State arising out of breach of insurance contracts, now frequently referred to as the anticipatory breach of an insurance contract or policy, is not new. In our examination of the authorities, we find a considerable number of opinions announcing very clearly basic principles.

The cases examined illustrate a variety of actionable breaches and point to decisive factors determinative of the question of whether, in fact, there has been a breach.

*Ætna Life Ins. Co.* v. *Phifer,* 160 Ark. 98, (1923), 254 S. W. 335, presents one of the typical cases wherein suit was brought and maintained for the anticipatory breach of the contract or policy.

In addition to denying the liability upon the disability clause of the contract, the insurance company pleaded as one of the reasons therefor that the policy had lapsed by a failure to pay premium on November 17, 1921. The insurer disavowed the policy, and was insisting that it should not be bound thereby. This was not a dispute arising solely out of an alleged liability upon the disability clause of the policy, about which there might have been a dispute. Prior to the time of the filing of the suit the insurance company, by letter, refused to consider the claim on account of the alleged lapse of the policy, by reason of nonpayment of premiums. The insured had his election in that case to sue for the amount that had accrued by reason of the disability, or to sue for breach of the contract which the insurer did not intend to perform.

In 1927, in the case of *Mutual Relief Ass'n* v. *Ray,* 173 Ark. 9, 292 S. W. 396, the insurer repudiated its contract with the insured by an unwarranted increase in the assessments which the insured originally agreed to pay to keep the policy in force, and attempted to lapse its policy, or contract, because the insured refused to accede to the demands of the insurer for such increased rate. This was a plain disavowal and repudiation of the obligations of the contract of insurance, and the insured was permitted to recover, and the court fixed the measure of damages in that case by quoting with approval from the opinion of *Supreme Council A. L. H.* v. *Black,* 123 Fed. 650, 653: "According to the clear weight of authority, if an insurance company wrongfully cancels a policy or otherwise wrongfully renounces the contract, the insured may, at his election, treat the contract as rescinded, and recover back all the premiums he had paid."

Again in *Security Life Ins. Co.* v. *Matthews,* 178 Ark. 775, 778, 12 S. W. (2d) 865, the insurer wrongfully declared that it was no longer bound by the terms of the insurance contract and declared a forfeiture thereon and

wrongfully refused to receive a tender of premiums. The insured filed his suit for the anticipatory breach of the contract, and was permitted to recover damages under the rule announced in the case of *Mutual Relief Ass'n* v. *Ray, supra.*

In *Liberty Life Ins. Co.* v. *Olive,* 180 Ark. 339, 21 S. W. (2d) 405, the insurer wrongfully increased the rates of assessments, and, upon insured's refusal to ·pay the increased rate, lapsed the contract of insurance. The insured was ready, able, willing and anxious to carry out the contract and make payments as provided in the policy. This was an anticipatory breach of the contract, and the insured was permitted to recover. Although the insurer offered, after the suit was filed, to reinstate the policy, without examination or formality on the part of insured, the breach had already been committed, and the insured was permitted to pursue her remedy, which she had elected to take after the contract had been renounced and repudiated.

Again in the case of *National Life & Acc. Ins. Co.* v. *Whitfield,* 186 Ark. 198, 53 S. W. (2d) 10, in an opinion written by Justice KIRBY, the court held that the policy was breached by the insurance company. . In this case the company not only repudiated or refused to be .bound by the policy or contract of insurance, according to its terms, but, when sued, alleged an affirmative defense to the claims made by the insured, which defense was without a basis of fact.

In the case of *Atlas Life Insurance Co.* v. *Bolling,* 186 Ark. 218, 53 S. W. (2d) 1, the company denied that the policy had ever been in force or effect, alleging that it had been obtained through fraud on the part of the appellee in that he had made false statements in his application, etc., thereby evidencing the intention of insurer not to be bound thereby, and such renunciation and repudiation of the policy justified the suit for the breach of the contract.

Again in *Mutual Life Ins. Co.* v. *Marsh,* 186 Ark. 861, 56 S. W. (2d) 433, this court, after an analysis and reconsideration of the opinions of this court with reference to suits for damages for the anticipatory breach of

contracts, said: "Especially is the rule clear where the insurer not only repudiates the contract by his declaration that he will not pay in future, but also violates a present obligation under the contract, by refusing to accept a premium when due. It would indeed be a harsh doctrine that compelled the insured to struggle on paying premiums all his life or tendering premiums to an unfriendly insurance company, in constant apprehension of a lawsuit in place of an immediate cash payment, as his family's inheritance upon his own decease. The insurer's refusal to perform his promise, however, must be distinct, unequivocal and absolute, and the reliance by the insured upon such renunciation must be equally clear to warrant his action for damages before maturity of the contract. And if, with knowledge of the facts, the insured elects to continue with the contract, he cannot subsequently exercise a second and inconsistent election to treat it as abrogated."

The rule as to liability was clearly announced and discussed in the Marsh case, *supra,* pages 867 and 868. This court made a clear distinction in that case as between a dispute concerning the rights of the parties under the contract, and in its performance, and the rights wherein the insurer had, by words or conduct, expressly repudiated the contract, refusing to be longer bound thereby, and the court said: "In all these cases it appears that damages for anticipatory breach were allowed because of an unqualified renunciation of the contract."

In the Marsh case the insurer was permitted to deny that the appellee was entitled to certain monthly benefits, without such a denial being deemed in law a repudiation of the contract. It was the exercise of a right, which it believed it had under the terms of the contract. In the Marsh case this court permitted the recovery under the terms of the contract, but refused to hold that there had been a breach of the contract.

In the case of *Metropolitan Life Ins. Co.* v. *Harper,* 189 Ark. 170, 70 S. W. (2d) 1042, 1044, this court permitted a recovery for the anticipatory breach against the insurer and in favor of the insured. In that case

the company refused to furnish forms upon which to make proof of the injuries received which caused the disability. Moreover, it denied upon the trial, that the certificate contained provisions alleged in the complaint; denied that the appellee was insured under the certificate it had issued to him. It also denied an intentional repudiation of the contract. While this Harper case does not possess the same distinctive character of repudiation or renunciation as some of the other cases discussed, it must have been decided upon that theory. This last statement is made because the Marsh case is cited as authority, as was also the Phifer case.

Although the Harper case was decided by a divided court, it must appear to the careful reader that it was based upon what the court considered a repudiation of the insurance contract. If the Harper case differs from other cases discussed, it is in the application of the rule, and such difference does not arise out of an intentional change of announced principles in the cases herein discussed.

It will be seen from the case of *Equitable Life Assurance Society of U. S.* v. *Pool,* 189 Ark. 101, 71 S. W. (2d) 455, in the court's statement of facts, the same principle obtains.

"That appellee suffered total and permanent disability prior to January 1, 1932, which was recognized by appellant by making monthly payments according to the terms of the policy up to and until April, 1933; that on the 10th day of April, 1933, appellant notified appellee that on and after that date it would discontinue payments upon the total and permanent disability clause of said policy of insurance, and that it would not waive the payment of premium on said policy which would mature June 27, 1933."

Upon failure of the insured in that case to pay premium on July 27, 1933, the insurer notified insured that his policy had lapsed. The insured in the case proved his total disability in a suit thereafter filed for the anticipatory breach of the contract and relied upon this act of insurer in declaring a lapse of the policy as establishing

its intention not to be further bound by the terms of the contract.

In the instant case when the claimant had made his proof of claim for disability, he received a letter, dated December 15, acknowledging receipt of the proof and containing the following statements:

"Mr. Carthal R. Slaughter,

"700 Pine Street,

"Pine Bluff, Ark.

"RE: No. 265783

"Dear Sir:

"We wish to acknowledge receipt of claimant's statement executed by you in connection with your application for the disability benefits provided for in your policy.

"We wish to advise you that the disability clause contained in your policy does not provide for benefits in event of the loss of one limb. It provides that in event of the loss of two members of the body benefits are due and payable after receipt of proper proof. It further provides for disability benefits in event of total disability such as to prevent the insured from following any work whatsoever; however, in order to receive these benefits, the disability must be total at the time proof is furnished the company. In your case the claimant's statement was received by us on December 7, and according to our information you resumed work on a Government relief job on December 5. In view of this, of course, you can see that you are no longer totally disabled, and the company does not have any liability for the payment of any benefits to you.

"If at any time in the future you feel that your condition is such as to totally disable you and entitle you to the benefits contained in your policy, kindly advise us and your case will be given our careful attention.

"Yours very truly,

"Z. E. Whitley, Claim Department."

An analysis of the foregoing letter does not show that it was the intention of the insurer to disavow the terms of its contract. The letter states expressly the benefits provided in the contract.

We are not favored in this case with any record of what was set out in claimant's statement of his disability. It may or may not have been such as to disclose all facts showing his total and permanent disability. From the contents of the letter, however, above copied, it would seem that this proof made by the claimant was under that provision of the contract relating particularly to the loss of two or more members of the body, as constituting total disability. The attention, however, of the insured was called to the further fact that the policy provided for disability benefits in the event of total disability, such as to prevent the insured from following any work whatsoever, and attention is also called to the fact that the insured had resumed work since the injuries received by him. These matters called for an explanation.

Chief Justice Hart, in the case of *Ætna Life Ins. Co. v. Spencer,* 182 Ark. 496, 500, 32 S. W. (2d) 310, said: "Total disability is generally regarded as a relative matter which depends largely upon the occupation and employment in which the party insured is engaged. This court has held that provisions in insurance policies for indemnity in case the insured is totally disabled from prosecuting his business do not require that he shall be absolutely helpless, but such a disability is meant which renders him unable to perform all—the substantial and material acts of his business or the execution of them in the usual and customary way. *Industrial Mutual Indemnity Co. v. Hawkins,* 94 Ark. 417, 127 S. W. 457, 29 L. R. A. (N. S.) 635, 21 Ann. Cas. 1029; *Brotherhood of Locomotive Firemen & Enginemen v. Aday,* 97 Ark. 425, 134 S. W. 929; and *Ætna Life Ins. Co. v. Phifer,* 160 Ark. 98, 254 S. W. 335."

The above quotation has the approval of practically all of the courts, so it must appear that it is not in every case that total disability would appear from a bare statement of the loss of use of some of the members of the body. It may depend to some extent upon occupation, or employment, fitness and training therefor, or a lack of training. In one instance there would be a total disability, and in some other only a partial disability, or, in some cases, the ultimate consequences, such as shock,

causing impairment of the health or physical vigor or ability, may result in a total disability, and in other cases it would be only a partial disability.

It is a matter of common observation that there are many men active in professions, trades and callings, who have suffered the loss of the use of an arm or leg. So common is this, that such cases are not to be treated as exceptions.

It must appear that in this case the insurance company, appellant, was insisting upon its contract, though it was questioning the fact of total disability. This was not an inconsistent attitude. The further fact that the insured elected to treat this conduct on the part of the insurer as a breach did not make it so. An examination of all of the testimony presented and argued in the appeal, placed before us, confirms in our mind this opinion.

It must follow that this case should be reversed, and, if settlement be not had in accordance with the terms of the contract, under the evidence offered here, the pleadings could be treated, or may be treated as amended in the event appellant should not pay accrued monthly installments in accordance with the contract.

This declaration of the law applicable to this case disposes of the penalty and attorney's fees allowed upon the trial in the lower court, since the plaintiff must recover less than the amount sued for.

The judgment of the lower court is therefore reversed, and the cause remanded.