METROPOLITAN LIFE INSURANCE COMPANY *v.* McNEIL.

4-4205

Opinion delivered July 13, 1936.

LeRoy A. Lincoln, Moore, Gray, Burrow & Chowning and Streett & Streett, for appellant.

Shaver, Shaver & Williams, Sam T. & Tom Poe and T. H. Humphreys, Jr., for appellee.

JOHNSON; C. J. On May 1, 1926, appellant, Metropolitan Life Insurance Company, effected group insurance in favor of the Chicago, Rock Island & Pacific Ry. Co. employees, by the issuance of its group contract No. 3,000-G. On the same date the certificate of indemnity, here sued upon by appellee, Jett McNeil, was issued by appellant under said group contract. Subsequently, on November 27, 1927, a rider was issued by appellant increasing the death indemnity provided in the original certificate issued to appellee to the sum of $2,000, and for total and permanent disability, in lieu of death benefits, to $36 per month, for a period of sixty months.

On May 27, 1935, appellee instituted this proceeding in the Little River County Circuit Court against appellant, alleging the facts first stated, and that on or about October 6, 1933, he became totally and permanently disabled in purview of said contract; that due proof of disability had been made to appellant, but liability had been denied. He further alleged that appellant had breached its contract of indemnity. The prayer was for judgment for the present cash value of the sixty monthly installments of $36 each, attorney's fees, penalty and costs. The answer admitted the execution of the contract and that it was in full force and effect on October 6, 1933, but denied that appellee became totally disabled on said date or at any other time during the life of said contract. It was specifically denied that due notice of disability was given by appellee, but admitted that it was advised by appellee's attorney of the claimed total disability; it admitted that it had refused to pay the indemnity provided in said contract for total disability and affirmatively alleged that by the express terms of said indemnity contract, it had a legal right to do so. It therefore alleged

that its refusal to pay the indemnity, as demanded, was not a material breach of said contract, but was within its contractual rights. Appellant further alleged in its answer that on January 31, 1934, appellee's certificate of indemnity and group policy No. 3,000-G were canceled and that group policy No. 6880-G was issued in substitution therefor. The prayer was that appellee take nothing by reason of his suit, and in the alternative that appellee's recovery be limited to past-due installments.

Trial to a jury resulted in findings that appellant had breached and renounced its contract with appellee and that he was entitled to recover the present value of the sixty monthly installments of $36 each or $................. A judgment was duly entered in conformity to the jury's findings, and the court thereupon assessed penalty, attorney's fees and costs, from which this appeal comes.

It is conceded by appellant that the testimony adduced was amply sufficient to show that the insured was totally and permanently disabled on and after October 6, 1933; therefore, this phase of the case will not be further considered.

The major and controlling question in the case relates to the alleged renunciation of the contract by appellant or the measure of recoverable damages. The testimony on this issue of fact is in the form of letters passing between appellant, the railway company employer, and appellee's attorney, supplemented by the admissions of appellant that it denied all liability and had canceled the policy by substitution. The pertinent parts of the letters which are claimed as repudiating the contract are: the railway company employers' letter of April 30, 1934, in response to appellee's notice of disability to the insurer, which is as follows: "A review of the claim file shows Mr. McNeil became disabled October 6, 1933, and was released by his attending physician as fit for service upon January 6, 1934. * * * Mr. McNeil did return to work on January 8, 1934, and worked to and including February 16, 1934, when he again laid off on account of illness and has not been at work since.

"Subsequent to his return to work upon January 8, 1934, and prior to the last date he worked, February 16,

1934, the railway company was compelled to discontinue its former group insurance plan, and a new plan was adopted effective with February 1, 1934. All insured employees in the service actually upon January 31, 1934, had their former group insurance terminated as of that date, * * *. Mr. McNeil's former insurance terminated as described heretofore upon January 31, 1934, for the reason he was actually at work at that time. * * * the new plan became effective for him upon February 1, 1934, and any claim for benefits for absences subsequent to February 16, 1934, would come under the new plan.

"* * *. It will be noted that with the adoption of the new group insurance plan, total and permanent disability benefits were discontinued. In other words, no such benefits are provided for under the new and revised insurance plan. Therefore, for your client to receive such benefits under the former plan, it must be shown that he incurred a total and permanent disability while that plan was in effect, and that such total disability was continuous thereafter. It is obvious that such a situation does not obtain in Mr. McNeil's case for he returned to work upon January 8, 1934, and continued to February 16, 1934. Therefore, if he is now suffering with a total disability, the same became effective February 17, 1934, or 17 days after the former plan terminated and the present plan was placed in effect.

"It is also noted that all claims for health benefits under the former plan have been paid in full.

"Therefore the only possible claim this man might have at this time for benefits would be for the absence beginning February 17, 1934, under the present plan. * * *," and the employer's letter of September 17, 1934, as follows: "It is noticed in your letter that you state your investigations show that disability began October 6, 1933, and has been continuous since. Reference to the third paragraph of our letter of April 30th will reveal this is not a fact; * * *.

"Our letter of April 30th then described the change in our group insurance plan effective February 1, 1934, and advised that so far as we were able to ascertain Mr. McNeil had not filed claim under the new plan for ben-

efits for the period of absence beginning with February 17, 1934.

"As stated in our letter of April 30th, if Mr. McNeil will make claim for this last absence on form GH 24C and have the same certified to by his master mechanic and transmitted to us through the proper channels of the railway company we shall be glad to handle the matter to a conclusion with the insurance company. * * *,'' and the insurer's letter of October 1, 1934, adopting the stated position of employer in the letters set out above, which is as follows:

"Supplementing our letter of September 25, we have now had an opportunity of reviewing all the information relative to the case of the above.

"We note your contention that your client has suffered continuous total disability since October 6, 1933, despite the fact that there is in our possession from the records of the railway company information to the effect that McNeil worked from January 8th to and including February 16, 1934, and during this period he performed the duties of his occupation satisfactorily.

"As Mr. Rees informed you on February 1st, the contract covering the employees of the Chicago, Rock Island & Pacific Railway Company was changed to a plan which provided weekly health benefits in the event of total disability but eliminated total and permanent disability benefits under the life feature of the contract. It becomes very difficult to understand that your client has been totally and permanently disabled since October 6, 1933, because under date of January 20th Dr. C. E. Witt, the attending physician, supplied us with statement to the effect that McNeil was able to return to work on January 6, 1934, having recovered from the effects of the condition which rendered him totally disabled on October 6, 1933. The statement which accompanied your letter of September 15, 1934, from the same doctor, apparently has been made with complete disregard to his previous statement of recovery and ability to return to work on January 6, 1934.

"You can readily appreciate that contradictory statements of this sort are very hard to reconcile, and

while we are perfectly willing to give Mr. McNeil proper consideration, we cannot disregard that part of the case which is unfavorable to him and deal only with that which is favorable to his claim. All the facts must be carefully weighed in their respective order. It is noted that you are willing to furnish further proof of the continuance of the existence of the condition from October 6, 1933. We would be very pleased to have you do this, but unless there are some extenuating circumstances not yet known to us, Mr. Rees' position in his various letters to you that your client's return to work nullified any claim under the policy, in our opinion, is proper. However, we are entirely willing to consider this case from all angles and to facilitate the submission of further evidence we enclose several of our claim forms for completion.''

The only reasonable deduction to be drawn from the correspondence quoted above is that appellant and the employer very firmly took the position that appellee did not suffer total and permanent disability prior to February 1, 1934, when group policy No. 3,000-G was canceled by substitution. This conclusion is irresistible when we consider that appellant's last letter on the subject says: ''We are entirely willing to consider this case from all angles and to facilitate the submission of further evidence we enclose several of our claim forms for completion.''

When the correspondence is thus construed the legal query arises, does this suffice to show repudiation or renunciation of the insurance contract by the insurer? We have never held that mere denial of liability under contracts of indemnity, unaccompanied by other attending facts and circumstances indicating abandonment constitute a renunciation of such contracts by the insurer. *Ætna Life Insurance Co.* v. *Phifer,* 160 Ark. 98, 254 S. W. 335.

The nearest approach to this result is *Metropolitan Life Insurance Co.* v. *Harper,* 189 Ark. 170, 70 S. W. (2d) 1042, decided by a divided court, but the denial of liability there interposed was attended by facts and circumstances which tended to show that the insurer declined to be further bound by the contract.

In the more recent case of *Jefferson Standard Life Ins. Co.* v. *Slaughter,* 190 Ark. 402, 79 S. W. (2d) 58, we reviewed our former opinions on this question, and there stated the applicable rule to be that a mere denial of liability based upon resumption of activities by the insured did not constitute an abandonment or renunciation of the contract of indemnity by the insurer.

Irrespective of our former opinions on the question, however, the last case cited brings us within the rule adhered to by the great weight of American authority; and uniformity of opinion on such an important question is more desirable than a too strict adherence to individual views. See *New York Life Ins. Co.* v. *Viglas,* 297 U. S. 672, 56 S. Ct. 615, 80 L. Ed. 971, and cases there cited.

Other errors are urged upon us for review, but the conclusion stated render them unimportant. The branch of the case which determines total and permanent disability is affirmed. The award for total and permanent disability suffered, however, is excessive as heretofore pointed out. The rule is that liability attaches upon the happening of total and permanent disability, although not recoverable until due proof of disability was made. See *Smith* v. *Mutual Life Ins. Co.,* 188 Ark. 1111, 69 S. W. (2d) 874, and cases there cited. Appellee therefore is entitled to recover as a matter of law from October 6, 1933, up to August, 1935, the date of the trial, or sixteen monthly installments of $36 each, aggregating $576.

Judgment will be rendered here for this sum. The judgment for penalty and attorney's fees must be reversed and dismissed because appellee sued for an excessive amount.

Modified and affirmed.