**BROWN PAPER MILL CO., Inc., v. IRVIN.**

No. 12820.

Circuit Court of Appeals, Eighth Circuit.

Dec. 11, 1944.

L. J. Benckenstein, of Beaumont, Tex., and Gordon E. Young, of Pine Bluff, Ark. (Clyde R. Brown, of Monroe, La., on the brief), for appellant.

John Baxter, of Dermott, Ark. (Will J. Irvin, of Dermott, Ark., and Lee Ca-zort Jr., of Little Rock, Ark., on the brief), for appellee.

Before GARDNER, THOMAS, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

The appellee, Irvin, brought this action against the appellant, the Brown Paper Mill Company, Inc., alleging that under an oral agreement made by the parties in 1937 he was entitled to a broker's commission of 25 cents an acre on the purchase by the appellant from J. L. Williams & Sons, Inc., of 53,363.27 acres of Arkansas timber land. This is the second appeal in this action from a judgment in favor of the appellee for the full amount of the commission claimed by him, with interest from November 1, 1940, the date of the purchase contract. On the first appeal the case was remanded to the district court with directions to vacate its judgment, to make definite and certain findings on the issues of fact in dispute between the parties, to declare the law in accordance with the findings, and to enter the appropriate judgment. Brown Paper Mill Company, Inc., v. Irvin, 8 Cir., 134 F. 2d 337. The district court has restated its findings of fact and conclusions of law and has entered the same judgment in favor of appellee.

On this appeal, as on the first, the appellant challenges the sufficiency of the evidence to support the district court's findings of fact and judgment. It contends that there is no substantial evidence to show that the appellee was authorized by the alleged contract of 1937 to act as agent for appellant in the purchase of the Williams land; and denies that there is any evidence in the record to support either the finding that appellant at any time agreed to pay appellee a commission on the purchase of the Williams land, or the conclusion that appellee was the procuring cause of the purchase. Appellant also contends that, if the appellee ever had a contract with appellant, such as he claims, its rescission prior to the purchase of the Williams land is conclusively established, and that this action was prematurely brought. The district court resolved all of these issues in favor of appellee, being influenced in its decision on the facts by the conduct of the parties from the time of the appellee's alleged employment as broker until the purchase of the Williams land by appellant, and by testimony of the admissions of appellee's agency by officers of appellant.

234

■ The burden was upon the appellee to prove by substantial evidence not only the fact of his employment as broker, but also the terms of that employment, performance of the contract on his part, the amount of his commission earned and payable under the contract at the time of the trial of the action, and appellant's breach of the contract. Whether the district court's finding that appellee was employed by appellant as its agent in the purchase of the Williams land and its conclusion that appellee was the procuring cause of the purchase are correct, we find it unnecessary to decide. For, conceding that the court was right on each of these issues, there is no evidence in the record to show that any part of the commission sued for was due and payable to appellee either at the time of the institution of this action or at the time of its trial. On the contrary, the proof is that appellee's compensation under the contract, conceding that a contract as claimed is established by the evidence, was not payable when this action was begun; and there is a total absence of evidence to show what part, if any, of his commission was payable at the time of the trial.

The contract of November 14, 1940, between the Williams Company and appellant for the purchase of the Williams land is summarized in the record. It recites that the Williams Company, at the time of the execution of the contract, was the owner of approximately 30,000 acres of Arkansas land, and that it had contracted to purchase another tract of approximately 25,000 acres from a Minnesota corporation. The Williams Company agreed to sell all of the lands mentioned to the appellant, delivery and conveyance of the lands from seller to buyer to be made over a twelve-year period from January 15, 1941, with a minimum of seven and one-half per centum of the total acreage to be conveyed annually. The Williams Company was also obligated to furnish complete abstracts of title for examination by the appellant, with the further agreement that all lands, titles to which were disapproved by appellant, should be discharged from the contract. Appellee testified that prior to his negotiations with the Williams Company he had learned of the purchase by appellant of lands in Louisiana under a contract of like terms and conditions. He said that before beginning negotiations with the Williams Company he was advised by appellant that it would be interested in the purchase of the Williams land under a similar contract. This testimony of appellee shows that the purchase contract in this case was the one which he alleges he was employed to procure.

■ The contract under which appellee claims he was employed as an agent of appellant in the purchase of the Williams land was oral. Appellee testified that, by the terms of the contract, he was not entitled to the payment of his commission on any purchase of land procured by him until the appellant had accepted title and bought the land. He said that, if the title was defective and for that reason a sale did not go through, he was to get no commission, and that his commission was not due and payable to him until the sale was actually completed and the title actually passed on by the company; that he was to be paid 25 cents an acre on any lands that he could buy for appellant, subject to their inspection and approval by appellant; that if the titles were defective or if the sale did not go through he was not entitled to a commission. He said that sometimes it takes a long time to work out sales of large tracts of land, and that he was not entitled to the payment of his commission until the title to the lands located by him was actually vested in the appellant. This version of the terms of his contract was given by the appellee in his deposition taken more than two months before the trial and again at the trial. Later, in his redirect examination at the trial appellee said that he "considered" that his commission was "due" when the purchase contract "was made," but at the same time he admitted that the amount of his commission and the time it became payable were dependent upon acceptance of title by the appellant. Aside from the fact that the burden here was on the appellee, this attempt at a favorable interpretation of an unambiguous contract previously stated by appellee affords no basis for the court's finding that appellee's commission was payable when the purchase contract was signed nor for its conclusion that this action was not prematurely brought. Moreover, appellant and appellee admitted that appellee was employed by appellant as its agent in the purchase of certain small tracts of land under the very contract sued on in this case. While the purchase of the Williams tract was being negotiated, the appellee procured the pur-

chase by appellant of several small tracts of land under the contract sued on. Appellee's letters to appellant concerning these purchases show that his commission was not claimed nor paid until appellant had approved the title to the land and accepted conveyance of it. It is apparent from appellee's letters that in the instances mentioned his commission was paid either at the time of the delivery of the seller's deed to appellant or after that delivery. During the final negotiations between appellant and the Williams Company for the purchase of the Williams land, appellee wrote to appellant suggesting a meeting "to work out plans and terms for payment of the commission on the sale of this tract of lands." If, under the alleged contract between appellee and appellant, the amount of appellee's commission was certain and payable on the conclusion of a purchase of which he was the procuring cause, there was no necessity for further negotiations to determine either a plan or terms for its payment. This letter shows appellee's understanding that the amount of his commission, as well as the time of its payment, was not determined at the execution of the purchase contract which he claims to have procured.

It is said that the customary business of a real estate broker is to find for his principal a buyer or seller, ready, able, and willing to buy or sell, on terms satisfactory to his principal, and that, in the absence of a special contract between the broker and his principal providing otherwise, when the principal enters upon an executory contract for the purchase or sale of land upon terms satisfactory to him, the broker is entitled to the commission agreed upon whether or not the contract is fully executed. Moore v. Irwin, 89 Ark. 289, 116 S.W. 662, 20 L.R.A.,N.S., 1168, 131 Am. St.Rep. 97; Nelson v. Stolz, 197 Ark. 1053, 1058, 127 S.W.2d 138. The broker and principal, however, may make such a contract for the broker's services as is agreeable to them, and may make the payment of the broker's commission dependent upon the full performance of the contract of purchase or sale, or postpone the payment of the commission, or make the broker's right to the commission contingent upon the happening of future events, as is the case in the appellee's contract. Operators' Oil Co. v. Barbre, 10 Cir., 65 F.2d 857, 860.

Conceding, without deciding, that appellee's employment as a broker and the terms of that employment as stated by him are established by the evidence, the record is still barren of proof to support the judgment in this case. It is true, as the district court stated in its opinion, that the contract between the appellant and the Williams Company constituted a present purchase of the Williams land by the appellant, and that the appellant was bound to a faithful performance of the purchase contract according to its terms. But neither the amount nor the time of payment of the commission sued for was controlled by this purchase contract. These matters were governed by the contract between the appellee and the appellant, which, according to appellee's own testimony, postponed the payment of the commission to a time in the future and made the final determination of the amount of the commission dependent upon the happening of future events. There is no evidence in the record to show that any of the Williams land had been conveyed to the appellant at the time of the trial. The time for the first conveyance of lands by the Williams Company had not then expired. So far as the record goes, no abstracts of title had been tendered to or approved by appellant. There is no evidence of default in, or refusal of, performance of the purchase contract by either party to it. The purchase contract does not provide for the conveyance of a definite number of acres on which to compute appellee's commission of 25 cents an acre. Under appellee's statement of the terms of his contract, the amount of his commission was contingent upon the number of acres eventually conveyed to appellant. Moreover, his commission was payable only as and when the portions of the land were conveyed and title vested in appellant. The time for the payment of any part of appellee's commission was contingent upon the time of acceptance by appellant of title to portions of the land to be conveyed annually over a period of possibly twelve years. At the time of the trial of the case it was impossible to determine the total amount of appellee's commission, the amount of any installment of his commission, or the number of annual installments in which he would eventually be paid. In these circumstances the most that can be said for the appellee, at the time of the trial, is that the appellant had denied the existence of a contract binding appellant to pay appellee certain sums of money at some then undetermined dates in the future. We can find no authority for the pro-

position that one obligated by contract to pay money on a day in the future becomes liable to immediate payment by denying the existence of the contract. To so hold would be to substitute for appellant's actual obligation another which it never assumed. Appellant's contention that this action was prematurely brought is sustained.

■ Appellee argues that, since the appellant has repudiated the contract by denying its existence, the appellee is entitled to maintain the present action under the rule allowing such actions for an anticipatory breach of contract. By the weight of authority, however, such actions are maintainable only in cases in which the contract involved is executory, as where, at the time of the repudiation, there remained under the contract mutually dependent covenants to be performed by both parties. The rule allowing such actions does not apply to a bilateral contract which has become unilateral by complete performance on the part of the plaintiff, as is the situation here. 1 Restatement of the Law of Contracts, § 316 et seq.; 5 Williston on Contracts, Revised Edition, §§ 1296-1337; Roehm v. Horst, 178 U.S. 1, 20 S.Ct. 780, 44 L.Ed. 953; Central Trust Co. v. Chicago Auditorium Association, 240 U.S. 581, 36 S.Ct. 412, 60 L.Ed. 811, L.R.A. 1917B, 580; Moore v. Security Trust & Life Ins. Co., 8 Cir., 168 F. 496, interpreting and applying the Roehm case; Hawkinson v. Johnston, 8 Cir., 122 F.2d 724, 725, 728, 729, 137 A.L.R. 420, approving the doctrine of anticipatory breach of contract as stated in the Restatement, supra; Operators' Oil Co. v. Barbre, supra; Brimmer v. Union Oil Co., 10 Cir., 81 F.2d 437, 440, 105 A.L.R. 454. Especially is this true where, in addition to the fact that the time for performance of the party sued has not arrived, the amount of the recovery is also dependent upon future contingencies. Operators' Oil Co. v. Barbre, supra; 5 Williston on Contracts, § 1328, where the author also says: "The general rule is certainly that no unilateral promise for an executed agreed exchange to pay money at a future day can be enforced until that day arrives."

■ Our investigation of the Arkansas law which controls on the issue under discussion leads to the conclusion that the rule stated above prevails in that State. Manufacturers' Furniture Co. v. Read, 172 Ark. 642, 290 S.W. 353, 354, was an action to recover a broker's commission on an oral contract whereby the broker was employed by the defendant to negotiate a lease of real estate for a period of three months, with an option to renew the lease for a further definite term, on the agreement of the defendant to pay the broker as commission $15 per month during the rental period of three months, and the further sum of $10 per month payable monthly for the remainder of the lease if the option was exercised. The defense was a denial of the contract to pay any commission during the term of the lease acquired under the option. The broker sued to recover the full amount of the installments of his commission for that term. In denying recovery for any except the installments which had become due, the court said: "Counsel for appellee invoke the rule that where one party to a contract incapacitates himself from performance or unequivocally refuses to perform, the other party may sue for the whole of the anticipated damages resulting from the breach. Counsel cite authorities in support of that rule, but the rule does not apply to contracts, either written or verbal, to pay money at specified times." In support of its ruling the Arkansas court cited Roehm v. Horst, supra, and the decision of this court in Moore v. Security Trust & Life Ins. Co., supra. In Van Winkle v. Satterfield, 58 Ark. 617, 25 S.W. 1113, 23 L.R.A. 853, the court held that on a repudiation by an employer of a contract of employment before expiration of the term, the servant may bring suit at once only for the injury suffered by the loss of wages down to the day of trial.

Appellee relies on the Arkansas case of Mutual Life Ins. Co. v. Marsh, 186 Ark. 861, 56 S.W.2d 433. There are a number of decisions of the Supreme Court of Arkansas involving the question decided in this case. See Ætna Life Ins. Co. v. Phifer, 160 Ark. 98, 254 S.W. 335; National Life & Accident Ins. Co. v. Whitfield, 186 Ark. 198, 53 S.W.2d 10; Atlas Life Ins. Co. v. Bolling, 186 Ark. 218, 53 S.W.2d 1; Metropolitan Life Ins. Co. v. Harper, 189 Ark. 170, 70 S.W.2d 1042; Equitable Life Assurance Society v. Pool, 189 Ark. 101, 71 S.W. 2d 455; Jefferson Standard Life Ins. Co. v. Slaughter, 190 Ark. 402, 79 S.W.2d 58; Metropolitan Life Ins. Co. v. McNeil, 192 Ark. 978, 96 S.W.2d 476. These are decisions in actions on contracts of insurance for the payment of disability benefits in monthly installments over a period of years.

In some of them recovery was allowed for the present value of future installments, and in others, recovery was limited to the amount of the installments due at the time of the bringing of the suit or at the time of its trial. All of them, however, are distinguishable from the present case on the facts, since in all of them the insurance company had been guilty of some breach of its contract prior to the institution of the suit. In the cases in which recovery for future installments was allowed, the insurance company had not only breached its contract prior to the institution of the suit, but had also repudiated it in its entirety. In the cases of limited recovery, the insurance company had breached its contract by refusing to pay an installment benefit when it was due under the insurance contract, but it had not repudiated the contract. What has just been said applies also to those Arkansas insurance cases in which the insurance company breached its contract by demanding a premium greater than that provided in the contract, and, on the insured's refusal to pay, repudiated the whole contract. Mutual Relief Association v. Ray, 173 Ark. 9, 292 S.W. 396; Liberty Life Ins. Co. v. Olive, 180 Ark. 339, 21 S.W. 2d 405. And, although in some of the Arkansas cases there is a reference to the doctrine of anticipatory breach of contract, it was not actually applied nor really involved. See 5 Williston on Contracts, § 1317, and comment on Barneby et al. v. Barron G. Collier, Inc., 8 Cir., 65 F.2d 864, in Note 1; New York Life Ins. Co. v. Viglas, 297 U.S. 672, 682, 56 S.Ct. 615, 618, 80 L. Ed. 971.

In the present case, on appellee's version of his contract, his obligations under the contract were fully performed. There remains only the obligation of the appellant to pay money to the appellee in installments over a period of years. At the trial of the action the time for payment of the first installment of appellee's compensation under his contract had not arrived. These facts distinguish the present case from the Arkansas cases just discussed.

The judgment of the district court is reversed, and the case is remanded with directions to dismiss the complaint without prejudice to the right of the plaintiff to further proceedings against the defendant when his cause of action shall have accrued.