**J. H. YARBROUGH, Plaintiff,**

v.

**GENERAL AMERICAN LIFE INSUR-
ANCE COMPANY, Defendant.**

**No. E.D. 997.**

United States District Court
W. D. Arkansas,
El Dorado Division.

May 10, 1965.

T. J. Gentry, Little Rock, Ark., for plaintiff.

C. E. Wright, El Dorado, Ark., for defendant.

HENLEY, District Judge.

This is a diversity case brought by plaintiff, a citizen of Arkansas, against defendant, a Missouri corporation having its principal place of business in that State. The amount in controversy, judged by the demand of plaintiff, is in excess of $10,000, exclusive of interest and costs. Federal jurisdiction is not questioned and is established.

The suit is based upon two group industrial insurance policies issued by defendant and its predecessor, Missouri State Life Insurance Co., to Phillips Petroleum Company and providing life and disability insurance to employees of Phillips. Prior to September 1, 1961, the plaintiff was the holder of a certificate under each of the group policies, the earlier of which was written by Missouri State Life and assumed by defendant, and the other of which was issued by defendant itself. Plaintiff claims disability benefits under both policies.

In February of this year the Court denied a motion for summary judgment filed by plaintiff, but in connection with the denial suggested that the case be submitted to the Court, as a trier of disputed facts, on the record, including briefs, made up in connection with the motion. That suggestion was acceptable to both sides, and the case has been so submitted.

Plaintiff was an outdoor employee of Phillips for many years, his work involving outdoor activities in the oil fields in Arkansas and Texas. Effective September 1, 1961, Phillips permitted plaintiff to retire in advance of regular retirement age due to the deteriorating condition of his health. Plaintiff's complaints were rheumatoid arthritis, a serious and progressive disease, plus certain other conditions which need not be mentioned.

It is the position of the plaintiff that prior to and at the time of his retirement he was permanently and totally disabled within the meaning of the policies, and that he is entitled to the disability benefits which the policies provide. He claims further that the conduct of defendant with respect to his claim has been such that the defendant is liable not only for monthly installments alleged to have accrued up to this time, but also for present value of future installments, plus a statutory penalty of 12 percent and a reasonable attorney's fee.

In denying the claim of plaintiff defendant takes the position that prior to his retirement plaintiff was not totally and permanently disabled. It is further

contended that plaintiff did not make timely proof of disability on forms provided by the Company. And defendant denies that its conduct has been such as to amount to a repudiation of the contracts so as to entitle plaintiff to the present value of future installments. Defendant also denies that it is liable for any penalty of attorney's fee.

Prior to a significant amendment to the group policies in 1959 they provided participating Phillips employees with life insurance and disability insurance coverage. However, these coverages were not cumulative. That is to say, if a participating employee became disabled while covered by the policies and successfully established a claim for disability benefits, he lost his life insurance protection. Further, the policies specified in general, and with certain qualifications not here pertinent, that all insurance coverage ceased when an employee retired from the employ of Phillips, except that he could receive monthly benefits on account of a pre-retirement disability of sufficient magnitude, provided that he filed proof of such disability on forms provided by the Company within 12 months of his retirement.[1]

In 1959 both policies were amended by a written agreement between defendant and Phillips. By virtue of the amendment Phillips employees could continue their insurance protection under the policies after retirement if they elected to do so. However, it was provided that the continuance of insurance protection after retirement would be without prejudice to pre-retirement disability claims, provided that proof of such claims was made on Company forms within twelve months after retirement.

The certificates issued to plaintiff prior to the 1959 amendment to the group policies purported to set forth certain significant provisions of the policies themselves, including the provisions as to the making of post-retirement proof of pre-retirement disability.

When the policies were amended in 1959, no new certificates were issued to plaintiff, and there is nothing to indicate that he had any personal knowledge or was given any personal notice about the terms of the amendment, or that he knew that his electing to take post-retirement insurance protection would be without prejudice to a pre-retirement disability claim provided that he made sufficient proof of such disability within a year after he retired.

Immediately prior to his retirement plaintiff's basic life insurance coverage under his older certificate was $2,000, and his life insurance coverage under his newer certificate was $11,000. The disability provisions of the policies called for monthly disability benefit payments the amounts of which were based upon the amount of life insurance in force at the time of the commencement of compensable disability. Each policy set up optional schedule of payments with the option to be exercised by Phillips.[2] It was further provided that disability payments would be made to Phillips as trustee for the disabled certificate holder.

Both policies required that disability be both total and permanent in order to entitle a certificate holder to disability payments. And "total disability" was defined in substance as an inability, due to accident or disease, to engage in any occupation or to perform any work for wages or profit. The earlier policy excluded employment-connected disability. No such exclusion was contained in the later policy.

About the middle of August 1961 plaintiff took advantage of the 1959 amendment to the basic policies and elected to

---

1. The foregoing abstract of the policy provisions as they existed prior to the 1959 amendment about to be mentioned is perhaps oversimplified to some extent, but the Court believes it to be complete and accurate enough for present purposes.

2. There had been no exercise of the option by Phillips when the suit was filed. However, after the commencement of the action Phillips chose the option which called for payments of $5.75 per thousand dollars of life insurance in force to be made over a period of 240 months.

continue life insurance coverage after his retirement which by then was anticipated and was imminent. He chose to keep in force the full $2,000 coverage provided by his earlier policy, but reduced the coverage of the later policy from $11,000 to $2,000.

Upon his retirement plaintiff was issued two new certificates, which stated expressly that they superseded all former certificates. The new certificates recited certain provisions of the group policies relating to the continued life insurance protection of plaintiff, but did not refer in any way to the savings provision of the 1959 amendment relating to pre-retirement disability, and said nothing whatever about notice. As a matter of fact the new certificates themselves say nothing about any disability protection, and standing alone they seem to afford life insurance protection only. However, the defendant through its attorney conceded at pre-trial conference that plaintiff does have some disability protection under the new certificates, but that any disability payments under the new certificates would have to be based on plaintiff's present life insurance coverage which amounts to only $4,000, as compared to $13,000 under the old certificates.[3]

The one year period for making proof of a pre-retirement disability claim expired, as far as plaintiff was concerned, on September 1, 1962. As of that date he had not made any such proof.

On April 17, 1963, the present attorney for plaintiff addressed a demand letter to the defendant. That letter referred to the basic policies by number and also referred to the amount of life insurance under the older policy as being $2,000, and the amount of such insurance under the newer policy as being $11,000. It was stated that plaintiff had become totally disabled on August 31, 1961, as a result of rheumatoid arthritis, and that his disability was permanent. Counsel then proceeded:

"You have been advised of Mr. Yarbrough's disability prior to this time and he has heard nothing from you with regard to the payments to which he is entitled under the terms of the policies provided for total and permanent disability benefits.

"Demand is hereby made upon you for payment of benefits under the terms and provisions of said policies."

On April 26, 1963, a representative of the defendant wrote to counsel for plaintiff acknowledging receipt of counsel's letter of the 17th and advising that "we are writing to Phillips Petroleum Company in Bartlesville, Oklahoma to obtain information regarding Mr. Yarbrough's insurance."

On May 10, 1963, defendant's representative again wrote counsel for plaintiff as follows:

"Dear Mr. Gentry:

"Please refer to our letter of April 26, 1963.

"The Phillips Petroleum Company has advised us that Mr. Yarbrough retired effective September 1, 1961 and as a retired employee is currently insured for $2,000 under policy G–1110, and $2,000 under policy G–1110–R. We understand that Mr. Yarbrough last worked on August 31, 1961. Therefore, it appears that any claim for total and permanent disability benefits would be subject to the terms of the certificates issued to Mr. Yarbrough effective September 1, 1961.

---

3. Plaintiff has never undertaken and is not undertaking now to claim any disability payments on account of any disability arising since his retirement. Plaintiff is seeking to recover on the basis of a pre-retirement disability with the payments to be measured by reference to $13,000 in life insurance in effect at the onset of the alleged disability. Counsel for plaintiff does not appear to think that his client has any disability coverage under his new certificates, and the Court is not sure that he is incorrect in that connection, notwithstanding the concession of counsel for the defendant which has just been mentioned.

"With this understanding, the enclosed forms may be completed and submitted to us for our consideration. The 'Claimant's Statement' should be completed by Mr. Yarbrough and he should also sign the permission letter forms. Each doctor who has attended Mr. Yarbrough should complete one of the enclosed 'Attending Physician's Statement of Disability' forms.

"In furnishing these forms, the General American Life Insurance Company does not waive any of its rights or admit liability."

Plaintiff did not execute or submit to the Company the forms enclosed with the letter just quoted. In due course the defendant answered denying liability on the basis of an alleged absence of timely and sufficient proof of disability and on the further basis of an absence of compensable disability prior to retirement. It was alleged further in the answer that if plaintiff was under a disability prior to retirement it was employment connected and not compensable under the older policy.

## I.

■ Going first to the question of the existence of a pre-retirement disability on the part of the plaintiff, the Court has no difficulty in finding from a preponderance of the evidence and does find that prior to his retirement plaintiff was totally and permanently disabled within the meaning of both policies, as the terms thereof are construed under Arkansas law. The Court further finds from a preponderance of the evidence that the disability did not arise out of and was in no way connected with plaintiff's employment.

■ Under Arkansas law disability provisions appearing in insurance policies are liberally construed in favor of insureds. An insured under a policy like those involved here is not required to establish that he is completely helpless or bedfast in order to show a compensable total disability. It is sufficient if he is able to show that by reason of accident or disease he is unable to perform in a usual and customary manner all of the significant functions or tasks incident to some profession, work or trade for which he is fitted by education, age, training, and experience. Franklin Life Insurance Co. v. Burgess, 219 Ark. 834, 245 S.W.2d 210; DeSoto Life Insurance Co. v. Jeffett, 210 Ark. 371, 196 S.W.2d 243; Mutual Life Insurance Co. of New York v. Bowman, 209 Ark. 1001, 193 S.W.2d 480; Mutual Benefit Health & Accident Insurance Co. v. Murphy, 209 Ark. 945, 193 S.W.2d 305; Aetna Life Ins. Co. v. Orr, 205 Ark. 566, 169 S.W.2d 651; Travelers Ins. Co. v. Thompson, 193 Ark. 332, 99 S.W.2d 254; Mutual Benefit Health & Accident Ass'n v. Bird, 185 Ark. 445, 47 S.W.2d 812.

■ Further, even though an insured may physically be able to work in spite of his impairments, he is, nevertheless, considered to be totally disabled if his labors entail substantial risk to his life or remaining health, or if such labors subject him to pain and suffering which persons of ordinary fortitude would be unwilling to endure. Mutual Life Ins. Co. of New York v. Dowdle, 189 Ark. 296, 71 S.W.2d 691; Mutual Benefit Health & Accident Ass'n v. Bird, supra.

There is no question that from at least 1960 onward plaintiff was afflicted with a painful, serious, progressive, and crippling disease which required hospitalization and other treatment in 1960, and that he was permitted by his employer to retire on account of his physical condition. The evidence establishes that plaintiff did in fact work at his job down to the day he retired, but the Court finds that the performance of his work was at the risk of substantially worsening his condition, and that his labors were carried out under more pain and discomfort than a person of ordinary diligence, fortitude, and tolerance of pain would reasonably be expected to endure.

There is no question that plaintiff's disability was permanent from its onset.

## II.

The Court further finds and holds that the claim of plaintiff is neither barred nor premature by reason of his failure to make proof of disability within a year after his retirement or by his failure to make such proof up to this time on forms furnished or prescribed by the Company.

It must be remembered that the new certificates issued plaintiff when he retired did not refer to disability benefits and, as has been shown, those certificates while setting out pertinent provisions relating to plaintiff's continued life insurance coverage were silent as to his right to file a pre-retirement disability claim under his old certificates and were silent as to any requirement relative to the making of any proof of disability within any particular time or in any particular manner.

As the Court understands the law of Arkansas, an insured under a group policy is not bound by a notice requirement appearing in the master policy but not appearing in the individual certificate issued to the insured. See Missouri State Life Insurance Co. v. Foster, 188 Ark. 1116, 69 S.W.2d 869, and Missouri State Life Insurance Co. v. Johnson, 186 Ark. 519, 54 S.W.2d 407. And the Court thinks that this rule should apply with particular force where, as here, the individual certificates purport to set out significant provisions of the master policies.

Assuming, at least for the sake of argument, that if an individual certificate does no more than certify that the insured has coverage under a certain group policy, and that his protection is subject to the terms and conditions of that policy, the burden is upon the certificate holder to ascertain and comply with those terms and conditions, the Court thinks that if an insurer goes further and undertakes to recite or abstract certain provisions of the group policy, the individual insured has the right to assume that his certificate tells him all that he needs to know in order to protect his rights. Any other rule would lead to grave injustices and would permit group insurers to lay traps for ignorant or unwary certificate holders.

It is true that in Missouri State Life Insurance Co. v. Johnson, supra, some comment was made by the Court to the effect that the record did not indicate that the insured had the opportunity to inspect the master policy. But the Court does not think that it is the law of Arkansas that the rights of the holder of a certificate of group insurance should depend upon the existence or nonexistence of some theoretical right to examine and undertake to interpret the provisions of the master policy. The existence of such a right is usually of little or no practical value to the individual employee, and it is unreasonable and unrealistic to require its exercise or to penalize the certificate holder for not exercising it. Here, for instance, it would be palpably unreasonable to require plaintiff to proceed to the home office of Phillips at Bartlesville, Oklahoma, for the purpose of looking at the master policies.

The fact that plaintiff did not submit the forms furnished to his attorney by the defendant on May 10, 1963, gave the Court some difficulty during its initial and intermediate consideration of the case, and the Court called upon counsel to explain why the forms were not filled out and returned to the insurer.

Under date of April 30, 1965, counsel replied at length to the Court's inquiry, mailing a copy of his letter to opposing counsel. Counsel stated in substance that the forms were not executed and submitted for two reasons: First, that defendant's letter of May 10 was to the effect that plaintiff's rights would be governed by his new certificates which became effective September 1, 1961, and that plaintiff had no disability protection under those certificates; Second, that the letter from the defendant to plaintiff's counsel, dated April 26, 1963, amounted to a breach of contract under the holding of the Supreme Court of Arkansas in Metropolitan Life Insurance

Co. v. Harper, 189 Ark. 170, 70 S.W.2d 1042.

As will be seen, the Court does not agree with counsel that the letter of April 26, 1963, constituted a breach of contract. However, on the record as a whole the Court is persuaded that plaintiff's failure to execute and return the forms was both understandable and excusable.

The situation with respect to plaintiff's right to disability payments certainly was confusing, and the confusion was not of plaintiff's making. The new certificates did not mention disability coverage, did not refer to the "without prejudice" clause of the 1959 amendment to the group policies, and said nothing about notice. The matter was not clarified by the defendant's letter of May 10. The writer of that letter was on notice that plaintiff claimed to have become disabled prior to his retirement, and the statement in the letter that plaintiff's rights were governed by the new certificates was somewhat inexact.

It is true that the new certificates evidenced continued coverage under the group policies as amended in 1959, and that the 1959 amendment protected pre-retirement disability rights. But, it is to be kept in mind that a claim for pre-retirement disability benefits if seasonably made would be governed by the terms and provisions of the old certificates, and the amount of benefits would be calculated by reference to the life insurance in force at the onset of the disability and prior to retirement.

The Court thinks that in the circumstances counsel for plaintiff was justified in concluding that there would be no point in submitting forms to establish a pre-retirement disability if the rights of his client were governed by the terms of the new certificates which said nothing about disability protection, notice, or forms to establish disability.

This particular phase of the controversy between the parties, and perhaps the entire lawsuit, could have been avoided had the new certificates referred to the 1959 amendment, including its proof of disability provisions, and such reference could have been made easily. Its omission excused plaintiff from making his proof of disability within the one year period after retirement, and the Court holds that the omission, taken in connection with the statement in the letter of May 10, 1963, excused him from using the company forms when they were finally sent.

### III.

While the Court finds that plaintiff is entitled to recover herein, the Court does not find that defendant was guilty of such a breach or repudiation of the contract as would entitle plaintiff to the present value of future installments of disability payments under the rule announced in cases like Equitable Life Assurance Society of United States v. Pool, 200 Ark. 1108, 143 S.W.2d 25; Metropolitan Life Insurance Co. v. Harper, supra; Home Life Ins. Co. v. Ward, 189 Ark. 793, 75 S.W.2d 379; and Travelers Protective Association of America v. Stephens, 185 Ark. 660, 49 S.W.2d 364.

Those cases hold that where an insurer repudiates its contractual obligations, as by denying the existence or validity of the contract, or by refusing to comply with the terms thereof or by seeking to change those terms unilaterally to the insured's prejudice, or by manifesting an intent not to perform an obligation conceded or established to be due or to become due in the future, an insured entitled to disability payments is not limited in his recovery to installments which have accrued up to the time of suit, trial, or judgment, but may recover in addition to such installments the present value of future installments which will fall due under the policy, calculated with reference to the insured's life expectancy.

However, not every denial of liability by a disability insurer amounts to a renunciation or repudiation of the contract which will entitle the insured to recover the present value of future installments. And there is no repudiation where the insurer defends a par-

ticular claim within the framework of the policy, relying on the contract's own terms, conditions, and requirements. Mutual Life Insurance Co. of New York v. Holder, 194 Ark. 128, 105 S.W.2d 865; United Fidelity Life Insurance Co. v. Dempsey, 193 Ark. 204, 98 S.W.2d 943; Metropolitan Life Insurance Co. v. McNeil, 192 Ark. 978, 96 S.W.2d 476; Jefferson Standard Life Insurance Co. v. Slaughter, 190 Ark. 402, 79 S.W.2d 58.

█ The defendant here has never denied the existence of contractual relations with plaintiff and has never manifested any intent not to perform any established or recognized contractual obligation. Defendant has simply denied that plaintiff made the proof of disability required by the policies within the time limited by the policies and has denied that plaintiff prior to his retirement was totally and permanently disabled within the meaning of the policies. That the Court has determined that defendant was wrong in both of its contentions does not mean that the defendant repudiated the policies.

Specifically, the Court does not agree with counsel for plaintiff in his argument that defendant's letter of April 26, 1963, constituted an "anticipatory breach" or repudiation of defendant's contractual obligations. In so disagreeing the Court does not overlook the fact that in Metropolitan Life Insurance Co. v. Harper, supra, upon which plaintiff strongly relies, it was held by a sharply divided court that a letter quite similar to the one here under discussion did amount to a repudiation.

█ The Court has given careful consideration to Harper in full recognition that in a diversity case this Court is bound by ruling decisions of the Supreme Court of Arkansas whether this Court agrees with those decisions or not. There were present in Harper a number of factors not present here; further, the correctness of the majority opinion in Harper seems to have been questioned to some extent in Jefferson Standard Life Insurance Co. v. Slaughter, supra.

In his letter to defendant, dated April 17, 1963, in reply to which the letter of April 26 was written, counsel for plaintiff did not request any blank forms. Although the letter of April 17 states that plaintiff had theretofore advised defendant of his disability and claim for benefits and had not heard from defendant, the letter of April 26 stated that the letter of April 17 was the first information that it had received relative to the claim. There was no denial of liability in the letter of April 26, nor was there any refusal to send blank forms. The letter was written some 19 months after plaintiff's retirement, and the Court sees nothing unreasonable or improper in defendant's desiring to make some inquiry of Phillips before going further into the processing of plaintiff's claim.

Regardless of whether the Supreme Court of Arkansas would now decide the Harper case on its own facts as it was decided in 1934, the Court is convinced that were the facts of the instant case presented to the Arkansas Court today, that Court would hold that there has been no repudiation of the contract arising from the letter of April 26, 1963, or otherwise.

### IV.

Based on the payment option chosen ultimately by Phillips, plaintiff is entitled to disability benefits at the rate of $74.75 per month ($5.75 x 13). It is now necessary for the Court to determine the date from which the payments are to run.

Both policies provided that disability payments would begin three months after receipt of proof of disability but not before six months after the commence ment of disability. Plaintiff has not made "proof of disability" as contemplated by the policies, but the Court has held that this failure to make such proof has not brought about a loss of his rights and does not make the action premature.

The original letter of demand was written on April 17, 1963, and presumably was received on the following day at defendant's home office in St. Louis. The Court holds in the circumstances here

present that accrued disability payments should be computed from July 18, 1963, which was three months after the letter of demand presumably was received by defendant.

 Since plaintiff is not recovering the full amount for which he sued, there will be no award of any statutory penalty or attorney's fee. Plaintiff is entitled to the costs of the action.

The Court will enter an appropriate judgment. However, in preparing the judgment the Court will not undertake to compute in dollars and cents the amount of money which plaintiff is entitled to receive. Counsel should have no difficulty in making that computation. Under the terms of the policies, the payment will be made to Phillips as trustee for plaintiff.